**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA HALIGAS, | ) | |
| | ) | Case No. 22-cv-313 |
| Plaintiff, | ) | |
| | ) | Judge Elaine E. Bucklo |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, RICHARD | ) | |
| MCCALLUM, and JUAN DELGADO, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, City of Chicago, by and through its attorneys, Celia Meza Corporation Counsel, and Chicago Police Officers Richard McCallum ("McCallum"), and Juan Delgado ("Delgado"), collectively ("Defendants") by and through one of their attorneys, Jessica L. Griff, Assistant Corporation Counsel Supervisor, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss Plaintiff's Complaint in its entirety. In support of their motion, Defendants state as follows:

**INTRODUCTION**

Plaintiff filed a six-count complaint alleging (1) false arrest; (2) excessive force; (3) failure to intervene; (4) *Monell*, Unconstitutional Custom; (5) Monell and (6) indemnification. *See generally* Dkt. No. 1, Plaintiff's Complaint, ("Pl's. Compl."). Defendants City of Chicago, McCallum and Delgado move to dismiss Plaintiff's complaint in its' entirety.

**STATEMENT OF FACTS**

On January 30, 2020, Plaintiff had custody of her 3-year-old son. *See* Pl's Comp. at ¶10. Pursuant to the parents' custodial agreement, Plaintiff was to turn her son over to the custody of his father (here in after, "the father") at 3:00pm on that date. *See* Id. at ¶¶12, 13, *see also* Defendant McCallum's Body Worn Camera Video attached hereto as Exhibit 1 at 1:25;

1

Defendant Delgado's Body Worn Camera Video attached hereto as Exhibit 2 at 3:23. The father called Chicago Police when Plaintiff would not turn her son over to his custody at 3:00. Pl's Compl. at ¶¶15-16; Exh. 1 at 1:20- 1:33; Exh. 2 at 3:33-4:00. Defendant Officers responded to the call, arrived at Plaintiff's apartment building, and met with the father. Pl's Compl. at ¶18; Exh. 1 at 1:20- 1:33; Exh. 2 at 3:33-7:23. Immediately upon their arrival the father informed Defendant Officers that Plaintiff was violating the court order governing their parenting time by refusing to wake the child so the father could take custody. Pl's Compl. at ¶19; Exh. 1 at 1:20-2:40; Exh. 2 at 3:23-3:40. The father showed Defendant Officers a copy of the court order regarding the custodial agreement. Pl's Compl. at ¶¶20- 21; Exh. 1 at 1:20- 2:40; Exh. 2 at 3:40-3:50. Defendant McCallum reviewed the document, which as he perceived it, ordered that the father was granted custody of the child every other Friday after at 3:00pm. Pl's Compl. at ¶21; Exh. 1 at 1:20- 2:40. Following his review of the document, Defendant Officers proceeded upstairs to Plaintiff's apartment. Pl's Compl. at ¶¶24. Exh. 1 at 1:50, 6:53; Exh. 2 at 7:23. The time that Defendant Officers arrived at Plaintiff's apartment was approximately 4:00pm. *Id*. at 8:27,8:39, 8:57.  Upon arrival at Plaintiff's apartment Defendant Officers offered to speak with Plaintiff in the hallway, to which she refused and invited them into her home. Exh. 1 at 6:58-7:05; Exh. 2 at 8:55-9:07.  Defendant Officers questioned Plaintiff as to why she was not turning custody of her son over to the father. *Id*. at 7:20; Exh. 2 at 9:26. Plaintiff acknowledged that the order grants custody of her son to the father after 3:00pm, however insisted that her son was sick and therefore she refused to wake him and give custody of him to the father. *Id*. at 8:24- 9:37 Exh. 2 at 9:26-11:07. Defendant Officers informed Plaintiff that if she refused to comply with the order, she would be placed under arrest for interfering with the father's lawful visitation. *Id*. at 9:37- 9:44; Exh. 2 at 11:22-11:46.

At that point Plaintiff insisted that Defendants leave her apartment and began to back away from the officers. *Id.* at 10:06- 10:13; Exh. 2 at 12:05-12:18; Pl's Compl. at ¶38. Defendant McCallum removed his handcuffs and attempted to grab Plaintiff's arm to place her into handcuffs. Exh. 1 at 10:11; Exh. 2 at 12:35. Plaintiff continued to pull away from Defendant McCallum, resisted his efforts to arrest her, and began screaming. Exh. 1at 10:12-10:38; Exh. 2 at 12:35-13:15. Defendant McCallum repeatedly ordered Plaintiff to turn around and place her hands behind her back, in response, Plaintiff held her arms tight to her body and yelled "no, leave me alone". Exh. 1 at 10:30- 10:39; Exh. 2 at 12:32-12:42. Plaintiff admitted that when Defendant Officers were attempting to place her into custody that she was "backing up". Exh.1 at 16:26; Exh. 2 at 18:20.   As Plaintiff continued to resist, she pulled herself to the floor. Exh. 1at 10:38- 10:43, 10:53- 11:13; Exh. 2 at 12:42-13:17. Defendant Officers were ultimately able to gain control of Plaintiff's arms and place her in handcuffs. Exh. 1 at 11:17; Exh. 2 at 13:17. Indeed, eventually Plaintiff stopped screaming, she admitted to Defendant Officers that "I know I'm not handling this situation appropriately, if I had a do-over, I would do things very very different." Exh. 1 at 36:55- 37:00.  Plaintiff was arrested for resisting arrest and unlawful interference with visitation. Exh. 1at 14:12-14:29; Exh. 2 at 16:20-16:34. Ultimately, Plaintiff was released without charging.

**STANDARD OF REVIEW**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted and should be granted if the challenged pleading fails to state claims upon which relief can be granted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989).  A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Hallinan v. Fraternal*

*Order of Police of Chi. Lodge No.* 7, 570 F.3d 811, 820 (7th Cir. 2009). When considering a motion to dismiss the court accepts as true all well-pled facts alleged by the plaintiff and all reasonable inferences to be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *see also Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

## ARGUMENT

Plaintiff's complaint should be dismissed because the facts, as pled by Plaintiff establish that Defendant Officers had probable cause to arrest Plaintiff. Further, the video evidence establishes that Defendant Officers did not use excessive force against Plaintiff. The video evidence is admissible at this juncture, first, as it was clearly relied upon by Plaintiff in drafting her complaint (*See* Pl's Compl. at ¶¶18-24 where she includes allegations (not set forth on information and belief) and direct quotes from conversations she was not present for). The law is clear that this Court may consider materials that are incorporated by reference when ruling on a motion to dismiss pursuant to Rule 12(b)(6) without needing to convert the motion to a motion for summary judgment. *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). Further, this Court may relay on the video evidence as it clearly contradicts Plaintiff's allegations. *See See Hyung Seok Koh v. Graf, et al.*, 2013 WL 5348326 at *9-10, (N.D. IL. 2013)(J. Chang) (*citing Bogie v. Rosenberg,* 705 F.3d 603, 608 – 609, 610 – 612 (7th Cir. 2013)) (court may consider an interrogation video in deciding a motion to dismiss to determine if it contradicts the way the plaintiff's interrogation was pled in the complaint).

Therefore, because Plaintiff has failed to state a claim, this Court should grant Defendants' motion to dismiss Plaintiff's complaint.

4

I. **DEFENDANTS DID NOT VIOLATE THE FOURTH AMENDMENT THEREFORE PLAINTIFF'S COUNT I MUST FAIL**

Contrary to Plaintiff's allegations, Defendants actions did not violate the Fourth Amendment; therefore, Plaintiff's false arrest claim fails. Plaintiff's complaint refers to Illinois law concerning whether the offense that Plaintiff was arrested for was "arrestable". *See* Dkt No. 1 at ¶34. However, this statute is irrelevant to the determination of probable cause within the context of the Fourth Amendment. The United States Supreme Court has unequivocally held that a violation of state law is irrelevant to the question of whether a search or seizure is reasonable under the Fourth Amendment. "[W]hether or not a search is reasonable within the meaning of the Fourth Amendment ...has never depend[ed] on the law of the particular State in which the search occurs." *Virginia v. Moore,* 553 U.S. 164, 172, 128 S. Ct. 1598, 1605, 170 L. Ed. 2d 559 (2008).

In *Moore*, with issues similar to the present case, the Court held that Virginia police officers ***did not violate the Fourth Amendment*** by arresting a motorist whom they had probable cause to believe had violated Virginia law by driving with a suspended license, ***even though***, as matter of Virginia law, the officers *should* have issued a summons rather than made an arrest. *Id.* at 176. The Court explained that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt" and "[t]he arrest is constitutionally reasonable." *Id.* at 171. According to the Court, it is "obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set by rule." *Id.* at 172. "While those practices [v]ary from place to place and from time to time,' Fourth Amendment protections are not 'so variable' and cannot 'be made to turn upon such trivialities.'" *Id.* (quoting *Whren*, 517 U.S. at 815). This is because while individual states may construe their own constitutions as imposing more stringent constraints on

5

police conduct than does the federal constitution, state law cannot "alter the content of the Fourth Amendment." *Id.*

In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that police officers acted reasonably in stopping a car even though they violated regulations limiting the authority of plainclothes officers in unmarked vehicles. *See also, United States v. Goings*, 573 F.3d 1141, 1143 (11th Cir. 2009) (holding that it was "irrelevant for purposes of the Fourth Amendment" whether Georgia officers violated Florida law when they pursued the defendant across the Florida–Georgia line and arrested him in Florida, "so long as [the arrest] was supported by probable cause"*); see also United States v. Brewer*, 915 F.3d 408, 414 (7th Cir. 2019) ("Like certain warrant terms, state law does not by proxy heighten the Fourth Amendment's protections.)*; California v. Greenwood*, 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) ("We have never intimated ... that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs."); *United States v. Simon,* 937 F.3d 820, 834 (7th Cir. 2019) ("[W]e need not address what Illinois law requires or whether Rex satisfies it because Illinois law does not control the Fourth Amendment.")

Therefore, this case turns to the well established Fourth Amendment law to determine whether of not the officer had probable cause to arrest Plaintiff.

### A. **Defendants had Probable Cause to Arrest Plaintiff**

Based on the information known to the Defendant Officers, they had probable cause to arrest Plaintiff on January 30, 2020, therefore, Plaintiff's Fourth Amendment false arrest claim must fail. "Probable cause to justify an arrest exists if the totality of the circumstances known to the officer *at the time of the arrest* would warrant a reasonable, prudent person in believing that

6

the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 713 (7th Cir. 2013). Probable cause is evaluated "on the facts as they would have appeared to a reasonable person in the position of the arresting officer," at the time of arrest. *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original); *Mucha v.Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011). "Allegations by eyewitnesses supply probable cause when the statements, if true, show that a crime has occurred." *Askew v. City of Chicago*, 440 F.3d 894 (7th Cir. 2006)(citing *Gramenos v. Jewel Companies, Inc*., 797 F.2d 432 (7th Cir. 1986); see also *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988). Furthermore, it does not matter whether or not the accused person denies the allegations. *Askew*, 440 F.3d at 895. "Police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth." *Id.* (citing *Wilson v. McRae's, Inc*., 413 F.3d 692 (7th Cir.2005)); *Driebel v. Milwaukee*, 298 F.3d 622, 643-44 (7th Cir.2002); *Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520, 524 (7th Cir.2001). Probable cause provides an absolute defense to any claim brought under § 1983 that an arrest was unreasonable. *See Gutierrez v. Kermon*, 722 F.3d 1007, 1009 (7th Cir. 2013).

Here, Defendant Officers were informed by the father that a court order granted him custody of his son after 3:00pm. Pl's Compl. at ¶¶20- 21; Exh. 1 at 1:20- 2:40; Exh. 2 at 3:23. Defendant McCallum confirmed this by reviewing the order. Pl's Compl. at ¶¶20- 21; Exh. 1 at 1:20- 2:40; Exh. 2 at 3:40-3:50. After reviewing the order, Defendant Officers went to Plaintiff's apartment in an attempt to gain her compliance with the Court order. Pl's Compl. at ¶¶24. Exh. 1 at 1:50, 6:53; Exh. 2 at 7:23. Plaintiff did not agree. Exh. 1 at 8:24- 9:37; Exh. 2 at 9:26-11:07.

7

Plaintiff acknowledged that the order allowed for the father to take custody after 3:00pm, however stated she would not wake her son up. Exh. 1 at 8:24- 9:37; Exh. 2 at 9:26-11:07. Indeed, much later Plaintiff admitted "I know I'm not handling this situation appropriately, if I had a do-over, I would do things very very different." Exh. 1 at 36:55- 37:00. As a result of Plaintiff's failure to comply with a valid court order, Defendant Officers placed her under arrest. Exh. 1 at 9:37- 9:44; Exh. 2 at 16:20-16:34. Plaintiff resisted Defendants' efforts to place her under arrest. Exh. 1 at 10:30- 10:43, 10:53- 11:13; Exh. 2 at 12:05-12:18, 12:35-13:15. Defendant McCallum gave Plaintiff several commands to place her hands behind her back and she both physically and verbally refused in violation of 720 ILCS 5.0/31-1-A. Exh. 1 at 10:30- 10:43, 10:53- 11:13; Exh. 2 at 12:32-12:42. Therefore, Defendant Officers probable cause to arrest Plaintiff based on the complaints of the father, the court order which was presented to them and reviewed by Defendant McCallum, Plaintiff's admission that the order granted custody to the father after 3:00pm, *and* Plaintiff's actions in resisting arrest. As a result, Defendants had probable cause to arrest Plaintiff, her false arrest claim fails under the Fourth Amendment and this Court should dismiss Count I of Plaintiff's Complaint.

## II. Defendants did not Excessive Force Against Plaintiff

The incontrovertible video evidence clearly shows that Defendant Officers used only the force necessary to place Plaintiff into custody, therefore, Plaintiff's excessive force claim must fail. An officer "who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Williams v. Brooks* 809 F.3d 936, 944 (7th Cir. 2016). That right is circumscribed by the Fourth Amendment's reasonableness standard. *Id.* Factors relevant to the reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts "remain cognizant of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Williams*, 809 F.3d at 944.

In support of her excessive-force claim, Plaintiff alleges that Defendant McCallum put a handcuff on one of her wrists and pulled her to the floor in front of him then Defendant Officers grabbed her wrists and arms while she was on the floor, pulling her up and wrenching her limbs around while she screamed that they were hurting her. Pl's Compl. at ¶¶39, 41. Plaintiff further alleges that Defendant Officers then pulled her to her feet, twisted her arms behind her back and handcuffed her other wrist. *Id*. at ¶42.

However, Plaintiff's claims are clearly contradicted by the video which shows that Plaintiff was not under control and was actively yelling and flailing her arms. Exh. 1 at 10:30- 10:43, 10:53-11:13; Exh. 2 at 12:35-13:15, Defendant McCallum informed Plaintiff that she was being placed under arrest and she immediately resisted arrest. Exh. 1 at 10:11- 10:38. Plaintiff admitted that when Defendant Officers were attempting to place her into custody that she was "backing up". Exh.1 at 16:26; Exh. 2 at 18:20. Plaintiff backed herself into a small corner, pulled her arms away from Defendant McCallum, and ultimately threw herself on the ground. Exh. 1 at 10:23-10:42; Exh. 2 at 12:42-13:17. Defendant Officers – who never went to the ground- were able to pull Plaintiff back to her feet, yet she continued to pull away and eventually went back to the ground. Exh. 1 at 10:47; Exh. 2 at 13:17. Defendant Officer again pulled Plaintiff back to her feet and ultimately gained control over Plaintiff's other arm. Exh. 1 at 10:23- 10:59; Exh. 2 at 12:55-13:13:15.

The Seventh Circuit has repeatedly held that "the police may use significant force to subdue someone who is actively resisting lawful detention. *Turner v. City of Champaign*, 979 F.3d 563, 569-70 (7th Cir. 2020) (officers did not use excessive force by taking the plaintiff to the ground where he resisted the officers actively and continually). The amount of force used by Defendant Officers was measured and proportionate and allowed them to effectuate the arrest. See *Rebolar v. City of Chicago*, 897 F. Supp. 2d 723, 738 (N.D. Ill. 2012) (officers did not use excessive force when they grabbed plaintiff's arm and pushed him into plastic garbage cans while trying to restrain him); *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013) (use of an "arm bar" or "wrist lock" technique to subdue an actively resisting suspect did not constitute excessive force); *Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011); *Estate of Phillips v. Milwaukee*, 123 F.3d 586, 592-93 (7th Cir. 1997). Under these circumstances, Defendant Officers used an objectively reasonable amount of force to effectuate Plaintiff's arrest and therefore her excessive force claim must fail.

### III. PLAINTIFF'S FAILURE TO INTERVENE FAILS AS PLAINTIFF CANNOT PROCEED ON COUNTS I AND II.

To succeed on her failure to intervene claim against Defendant Delgado, Plaintiff must show that Defendant Delgado knew Plaintiff was being falsely arrested and that excessive force was being used "*and* ... had a realistic opportunity to intervene to prevent the harm from occurring." *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008) (emphasis in original). However, because, Plaintiff's false arrest and excessive force claims fail (for the reasons set forth above), Plaintiff cannot then establish the requisite elements of a failure to intervene claim. As such, Count III of Plaintiff's Complaint must be dismissed.

### IV. PLAINTIFF'S MONELL CLAIMS ARE INADEQUATELY PLEADED AND NECESSARILY FAIL.

10

Plaintiff's *Monell* claims allege that the City of Chicago Police Department has a widespread custom or practice of "unnecessarily escalating encounters" and a failure to train officers in how to handle situations regarding accusations of violations of "court orders regarding parenting time." Pl's Compl. at ¶¶74-79, 80-85. These claims should be dismissed pursuant to Rule 12(b) (6) because they are conclusory and bare recitations of the elements of *Monell*, are not plausible, and there is no underlying constitutional violation. Plaintiff's claims are not legally sufficient to state a claim for relief even under notice pleading requirements.

### A. <u>Basis and Requirements for *Monell* Liability</u>

Municipal liability is imposed in instances where injuries are "inflicted pursuant to [g]overnment 'policy or custom[,]'" and is directed at the municipality itself. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810, 105 S.Ct. 2427, 2429 (1985); *see also Estate of Sims ex rel Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) ("municipal liability is limited to action for which the municipality is actually responsible") (citations omitted). Mere employment of an offending official is insufficient to establish liability. *City* of *Oklahoma*, 471 U.S. at 810. In bringing a proper *Monell* claim, a plaintiff can allege that a municipality's policy violates an individual's civil rights in one of three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policy making authority.'

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (quoting *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). A plaintiff must allege that a particular policy, practice or custom of the municipality was the moving force behind the plaintiff suffering a constitutional

deprivation. *See, e.g. Waters v. City of Chicago,* 580 F.3d 575, 580-81 (7th Cir. 2009); *Johnson v. Cook County*, 526 Fed. Appx. 692, 695, 2013 WL 2005236, at *3 (7th Cir. 2013) ("deliberate action" by the municipality must be the moving force behind the constitutional violation).

In the instance of an express policy, the policy will explicitly violate a constitutional right when enforced. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). As to the widespread practice theory, it requires evidence of a true municipal policy, not a random event. *Calhoun*, 408 F.3d at 379; *see also Sroga v. Preckwinkle*, No. 14 C 6594, 2016 WL 1043427, at *8 (N.D. Ill. Mar. 16, 2016) (Chang, J.). *Monell* allegations that rely on nothing more than boilerplate, conclusory allegations absent factual backing are properly dismissed for failing to state a claim. *See, e.g. Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792-793 (N.D. Ill. 2013) (dismissing *Monell* claim because it was "nothing more than conclusory boilerplate").

### B. Plaintiff's *Monell* Claims

#### i. Plaintiff's *Monell* claims do not allege a constitutional violation by an express policy or by a final policy maker.

A municipality may be liable through § 1983 when an express policy violates a person's constitutional rights or when the violation was caused by the decision of a final policy maker. *Kujawski v. Bd. Of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). In this case, Plaintiff's Complaint does not allege any express policy that violated her constitutional rights. *See* Pl's Compl. at ¶¶74-79, 80-85. Plaintiff likewise makes no allegations that any person with final policy making authority violated her constitutional rights. *Id.* Therefore, Plaintiff's *Monell* claims cannot survive under the first or third theory as stated in *McTigue*. 60 F.3d at 382.

#### ii. Plaintiff fails to plead a widespread practice *Monell* claim for unnecessarily escalating encounters and failing to train officers.

Plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley,* 671 F.3d at 616 (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010)). The more complex Plaintiffs' claim, the more specificity is required to survive a motion to dismiss. *McCauley,* 671 F.3d at 616-17. A threadbare recital of the elements supported by conclusory statements is disregarded. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). There is no bright-line rule to determine the bare minimum a Plaintiff has to plead in order for a *Monell* claim to survive. *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014). However, "isolated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice." *Nettles-Bey v. Burke*, No. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015). Vague or conclusory allegations that a municipality failed to train its officers is not enough to proceed on a *Monell* claim. *Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, *4 (N.D. IL. Dec. 11, 2014). The failure alleged must arise to the level of a deliberate indifference. *Connick*, 563 U.S. at 61. Anything short of deliberate indifference strays into *respondeat superior* territory, which is not recognized by §1983. *Id.*, at 62. Both of Plaintiff's alleged widespread policies are based on conclusions, do not allege any facts supporting that these alleged policies were plausibly the moving force of the Defendant Officers' conduct, and there is no underlying constitutional violation.

First, Plaintiff's claim that the City has a policy of unnecessarily escalating encounters and failing to train its officers are conclusory and boilerplate language parroting the elements of *Monell*. Plaintiff's allegations are limited to a reference to the United States Department of Justice

13

("DOJ") investigation into the Chicago Police Department, conclusory statements, and boilerplate recitations of the elements of a *Monell* claim. Pl's Compl. at ¶¶74-79, 80-85. However, the DOJ Report was issued before the City entered into a consent decree with the State of Illinois, agreeing to undertake substantial measures to reform the Chicago Police Department.[1] The City agreed to enter into the Consent Decree to

> ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, this Agreement seeks to ensure that Chicago police officers are provided with the training, resources, and support they need to do their jobs professionally and safely.

Consent Decree at p. 1. That effort shows that the City has not turned a blind eye to the problems Plaintiff complains of, nor adopted any widespread practice as its own. In fact, it shows that the City is taking affirmative steps to prevent the sort of problems that Plaintiff references. Whatever problems the DOJ found in 2017, the consent decree shows that the City was not deliberately indifferent to those issues in 2020, when this incident took place. Accordingly, these documents cannot be used to support Plaintiff's claim. The remaining allegations are conclusory statements and boilerplate language that are insufficient to plead a *Monell* claim.

Second, Plaintiff fails to allege sufficient facts to make it plausible that the alleged widespread policies were the moving force behind the Defendant Officers' actions. Here, Plaintiff makes no allegations that the custom of unnecessarily escalating situations or failing to train officers was the moving force for the Defendant Officers' alleged constitutional violation. *See* Pl's Compl. at ¶¶74-79, 80-85. Instead, Plaintiff offers broad conclusions with no factual support that are not provided the presumption of truth. Simply, Plaintiff fails to allege any facts that can lead

---

[1] The City asks the Court to take judicial notice of the consent decree, it being a publicly available document and the termination of previous litigation. *See State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. ("Consent Decree").

14

this Court to determine that it is plausible that this incident is anything more than an isolated occurrence and Plaintiff's *Monell* claims fail.

Third, Plaintiff's *Monell* claims cannot survive because there is no underlying constitutional violation. A municipality cannot be held liable on a *Monell* theory of liability if there was no underlying constitutional violation. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010). Here, as argued fully above, Defendant Officers did not violate Plaintiff's constitutional rights. Therefore, there is no underlying constitutional violation and Plaintiff's *Monell* claims fail. Plaintiff's *Monell* claims, Counts IV and V should be dismissed with prejudice because they are conclusory and bare recitations of the elements of *Monell*, are not plausible, and there is no underlying constitutional violation.

## V. PLAINTIFF'S INDEMNIFICATION CLAIM MUST FAIL.

An indemnification claim fails if the underlying claims against the Defendant Officers fail. *Bradford v. City of Chicago*, No. 16 CV 1663, 2021 WL 1208958, *9 (N.D. Ill. Mar. 31, 2021). Plaintiff's federal claims fail because the Defendant Officers did not violate the Fourth Amendment, did not use excessive force, and did not fail to intervene. Therefore, Plaintiff's indemnification claim, Count VI, against Defendant City of Chicago necessarily fails and should be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants City of Chicago, McCallum and Delgado respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint and for any other relief deemed just by this Honorable Court.

Respectfully submitted,

                                                                      /s/ *Jessica L. Griff*
                                                                      Jessica L. Griff
                                                       Assistant Corporation Counsel Supervisor

Jessica L. Griff, Assistant Corporation Counsel Supervisor
Michele McGee, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-2826
Attorney No. 6309134
Jessica.Griff@cityofchicago.org
*Attorneys for the Defendant Officers*

                                                                    */s/ Maxwell Evan Lisy*
                                                                    MAXWELL EVAN LISY
                                                                    Assistant Corporation Counsel

Maxwell Evan Lisy, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-0305
Attorney No.: 6321014
Maxwell.lisy@cityofchicago.org
Counsel for Defendant City of Chicago