**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MELISSA HALIGAS, ) | |
| ) | Case No. 22-cv-313 |
| Plaintiff, ) | |
| ) | Judge Elaine E. Bucklo |
| v. ) | |
| ) | Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, RICHARD ) | |
| MCCALLUM, and JUAN DELGADO, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Defendants, City of Chicago, by and through its attorneys, Celia Meza Corporation Counsel, and Chicago Police Officers Richard McCallum ("McCallum"), and Juan Delgado ("Delgado"), collectively ("Defendants") by and through one of their attorneys, Jessica L. Griff, Assistant Corporation Counsel Supervisor, for their reply in support of their Joint Motion to Dismiss state as follows:

**I.  This Court Should Consider The Video Evidence Which Completely Contradicts The Allegations In Plaintiffs Complaint.**

The video evidence in this case contradicts the allegations in Plaintiff's Complaint such that this Court should rely on the video to dismiss Plaintiff's case. Plaintiff's response is centered around the theme that this Court should not review the video evidence available to it. However, Plaintiff ignores that *she used and relied upon* the very same video evidence in drafting her complaint. Further, because the video evidence is clear and contradicts Plaintiff's claims, it is in the interest of judicial economy, that this Court review the video evidence in rulings on Defendants' motion to dismiss.

**A.  The Video Evidence Is Central To Plaintiff's Complaint.**

1

Interestingly, Plaintiff spends much of her response brief arguing why this Court should not consider the video evidence when ruling on Defendants' Motion to Dismiss, however, Plaintiff herself clearly relied on the video evidence in drafting her Complaint. It is true that Plaintiff never *directly* attaches the video, but she does directly quote the video for interactions that she was not present for. Plaintiff's complaint asserts the following facts:

> 18. Officers Richard McCallum and Juan Delgado arrived at Haligas's apartment, meeting the father in the building lobby.
> 19. The father told the officers his son was sick, and he accused Haligas of violating the court order governing their parenting time by refusing to wake the child so the father could take the child away.
> 20. The father briefly showed the officers a document on his cell phone that he claimed supported his accusation.
> 21. McCallum looked at the document on the father's phone.
> 22. McCallum said the document was "confusing" and remarked that it could have been faked.
> 23. McCallum declined the father's offer to email McCallum a copy of the document.
> 24. Without reviewing any further documentation, McCallum and Delgado left the father in the lobby and went to Haligas's apartment.

Since Plaintiff was not present for this interaction, it is clear that all of these allegations come from Plaintiff watching the video to draft the allegations in ***her*** Complaint. Despite this, in support of her motion Plaintiff relies on *Brown v. City of Chicago,* 21, cv 1397, Dkt. No. 52. In the *Brown* case, the Court declined to review the video evidence at issued and focused on two reasons for this denial, first that the video depicted only a portion of the relevant search. *Id*. at pg. 9. Second, the *Brown* court emphasized that the video was not attached to Plaintiff's complaint, nor was it "central" to the allegations. *Id*. at pg. Neither of these exceptions apply here.

Here, Plaintiff pleads several central allegations with facts obtained from the video. As the Court held in *Williamson*, "[w]hen a plaintiff attaches to the complaint a document… and her complaint ***references and relies upon that document in asserting her claim***, the contents of that document become part of the complaint and ***may be considered*** as such when the court decides a

2

motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013)(emphasis added) citing*, Centers v. Centennial Mortg., Inc.,* 398 F.3d 930, 933 (7th Cir.2005); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452–53 (7th Cir.1998). Indeed, in *Brown*, the court cautioned against exactly the behavior Plaintiff is engaging in here,

> "If, on the other, plaintiffs could avoid an application of the doctrine through carefully crafted assertions and omissions, then courts would run afoul of the very aim of the doctrine—preventing parties from "surviving a motion to dismiss by artful pleading or by failing to attach relevant documents."

*Brown v. City of Chicago*, 21 cv 1397, Dkt No. 52 at pg. 11, *citing*, *118 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Next, unlike the *Brown* case, there is no contention that some of the incident which Plaintiff complains of is not captured on video. Plaintiff alleges that the officers falsely arrested her (based in part on the information she obtained from watching the video evidence of the Defendants' interactions with her child's father) and that they used excessive force against her. The facts giving rise to each of these claims are captured entirely on the body worn cameras of Defendant Officers. Unlike in *Brown*, there is no issue that some of the incidents alleged are not captured. Therefore, Plaintiff cannot now argue that the video should not be used. It runs in the face of fairness and justice to say that Plaintiff may use and rely upon the video evidence to formulate the allegations in her complaint and may complain about the officer's conduct- that she only learned about by watching the video, and then in the next breath say that the video should not be used to prove that her claims fail.

### B. It Is In The Interest Of Judicial Economy For This Court To Review The Video Evidence.

As argued more thoroughly in Defendants' opening brief, because the video clearly contradicts the allegations pled by Plaintiff, this Court should consider the video evidence to

3

quickly dispose of Plaintiff's claims. Courts may relay on video evidence when it clearly contradicts Plaintiff's allegations. *See See Hyung Seok Koh v. Graf, et al.*, 2013 WL 5348326 at *9-10, (N.D. IL. 2013)(J. Chang) (*citing Bogie v. Rosenberg,* 705 F.3d 603, 608 – 609, 610 – 612 (7th Cir. 2013)) (court may consider an interrogation video in deciding a motion to dismiss to determine if it contradicts the way the plaintiff's interrogation was pled in the complaint). In this case, the video clearly shows the information known to the officer forming the basis for probable cause. Specifically, the video shows the father informing Defendant Officers about the situation, and that he has a court order granting him custody of his child starting at 3:00pm. Exh. 1 at 1:20-2:40; Exh. 2 at 3:23-3:40. The video then shows Defendant McCallum review the document, which as he perceived it, ordered that the father was granted custody of the child every other Friday after at 3:00pm, confirming what the father told him. Exh. 1 at 1:20- 2:40. On the same video, Plaintiff is captured acknowledging that despite the court order granting custody of her son to the father after 3:00pm, she refused to wake her son up and give custody of him to the father. Exh. 1 at 8:24-9:37; Exh. 2 at 9:26-11:07. The video also shows Defendant Officers inform Plaintiff that if she refused to comply with the order, she would be placed under arrest for interfering with the father's lawful visitation. Exh. 1 at 9:37- 9:44; Exh. 2 at 11:22-11:46. Further, the video clearly shows Plaintiff resisting arrest, a fact that Plaintiff ignores in her Complaint, and one defeats Plaintiff's false arrest claim.

Further, the video evidence clearly contradicts Plaintiff's claim that excessive force was used against her. The video shows Plaintiff began to back away from the officers. Exh.1 at 10:06-10:13; Exh. 2 at 12:05-12:18. You can see Defendant McCallum remove his handcuffs and attempt to grab Plaintiff's arm to place her into handcuffs. Exh. 1 at 10:11; Exh. 2 at 12:35. In response, Plaintiff continues to pull away from Defendant McCallum, resisting his efforts to arrest her, and

4

she begins screaming. Exh. 1 at 10:12-10:38; Exh. 2 at 12:35-13:15. Defendant McCallum repeatedly orders Plaintiff to turn around and place her hands behind her back, in response, Plaintiff holds her arms tight to her body and repeatedly yells "no, leave me alone". Exh. 1 at 10:30- 10:39; Exh. 2 at 12:32-12:42. In fact, the video evidence shows Plaintiff admitting that when Defendant Officers were attempting to place her into custody that she was "backing up". Exh.1 at 16:26; Exh. 2 at 18:20. As Plaintiff continued to resist, she pulled herself to the floor. Exh. 1 at 10:38- 10:43, 10:53- 11:13; Exh. 2 at 12:42-13:17. The video shows Defendant Officers ultimately able to gain control of Plaintiff's arms and place her in handcuffs. Exh. 1 at 11:17; Exh. 2 at 13:17. Because the incident as captured on video clearly shows that Plaintiff does not have a viable claim for false arrest or excessive force,[1] this Court should consider the video evidence and dismiss Plaintiff's case in its entirety.

## II. Plaintiff's Complaint Does Not Set Forth a Viable False Arrest Claim.

Plaintiff's response appears to concede that that a violation of state law is irrelevant to the question of whether a search or seizure is reasonable under the Fourth Amendment. Instead, Plaintiff asserts that she has a viable Fourth Amendment claim because Defendants did not have sufficient information to believe that Plaintiff was committing, had committed, or was about to commit a crime. This is false. Plaintiff does not seem to refute that probable cause to justify an arrest exists if the totality of the circumstances known to the officer *at the time of the arrest* would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon County*, 705 F.3d 706, 713 (7th Cir. 2013). Based on the information known to the Defendant Officers, they had probable cause to arrest

---

[1] Or failure to intervene as there was no unconstitutional conduct to intervene on

5

Plaintiff. Further, based on Plaintiff's actions, they had probable cause to arrest her for resisting arrest.

Here, Defendant Officers were informed by the father that a court order granted him custody of his son after 3:00pm. Pl's Compl. at ¶¶20- 21; Exh. 1 at 1:20- 2:40; Exh. 2 at 3:23. Defendant McCallum confirmed this by reviewing the order. Pl's Compl. at ¶¶20- 21; Exh. 1 at 1:20- 2:40; Exh. 2 at 3:40-3:50. After reviewing the order, Defendant Officers went to Plaintiff's apartment in an attempt to gain her compliance with the Court order. Pl's Compl. at ¶¶24. Exh. 1 at 1:50, 6:53; Exh. 2 at 7:23. Plaintiff did not agree. Exh. 1 at 8:24- 9:37; Exh. 2 at 9:26-11:07. In her response, Plaintiff argues that her complaint pleads that the court order shown to Defendants was the wrong order. Pl's Resp. at pg. 6. However, Plaintiff's ignores (in her Complaint and her response) that at the time of the incident, the information know the Defendant Officers, Plaintiff ***acknowledged*** that the order allowed for the father to take custody after 3:00pm, however stated she would not wake her son up. Exh. 1 at 8:24- 9:37; Exh. 2 at 9:26-11:07. Indeed, much later Plaintiff admitted "I know I'm not handling this situation appropriately, if I had a do-over, I would do things very very different." Exh. 1 at 36:55- 37:00. Despite these irrefutable facts, Plaintiff's Response now argues that a reasonable officer would have investigated further. Pl's Resp. at pg. 7. This argument fails. Plaintiff's own admissions establish probable cause and prohibit her from now claiming that Defendant Officers lacked probable cause to arrest her. Further, the record is clear that the information known to Defendant Officers at the time gave the officers probable cause to believe that the child was to be in the father's custody, but Plaintiff was inhibiting that.

Further, a fact strategically ignored by Plaintiff in her Complaint is that Defendant Officers also had probable cause to arrest her for resisting arrest. Plaintiff resisted Defendants' efforts to place her under arrest. Exh. 1 at 10:30- 10:43, 10:53- 11:13; Exh. 2 at 12:05-12:18, 12:35-13:15.

6

Defendant McCallum gave Plaintiff several commands to place her hands behind her back and she both physically and verbally refused in violation of 720 ILCS 5.0/31-1-A. Exh. 1 at 10:30- 10:43, 10:53- 11:13; Exh. 2 at 12:32-12:42. Therefore, Defendant Officers probable cause to arrest Plaintiff based on the complaints of the father, the court order which was presented to them and reviewed by Defendant McCallum, Plaintiff's admission that the order granted custody to the father after 3:00pm, *and* Plaintiff's actions in resisting arrest.

The record is clear that Defendants had probable cause to arrest Plaintiff, her false arrest claim fails under the Fourth Amendment and this Court should dismiss Count I of Plaintiff's Complaint.

### III.    Defendants Did Not Use Excessive Force Against Plaintiff.

As argued in Defendants' Motion, the un- refuted video evidence shows that Defendants did not use excessive force against Plaintiff. Rather, Plaintiff resisted arrest, and the Defendants used force necessary to effectuate her arrest. Plaintiff's response fails to address the case law set forth by Defendants, other than to point out that the cases cited to were granted at the summary judgment stage. Plaintiff's argument that this Court should essentially wait to rule on the issue of excessive force- despite the presence of compelling, uncontroverted video evidence should fail.

In an effort to save her excessive force claim Plaintiff refers to two unreported cases from the Central District of Illinois, *Skube v. Williamson* No. 12-3185, at *25 (C.D. Ill. Jan. 27, 2015) and *Covington v. Smith*, No. 05-1204, at *21 (C.D. Ill. Dec. 16, 2005). First, the *Skube* case is completely inapplicable to the situation in this case. Plaintiff asserts that *Skube* stands for the premise that stepping back and a short period of arguing are not resisting arrest. Dkt No. 23 at pg. 11. *Skube* involved a Plaintiff who, after being told she is under arrest, took one step back from the officer, argued verbally with the officer for 6 seconds and was then tased. *Skube*, No. CV 12-

7

3185, 2015 WL 890363, at *7 (C.D. Ill. Feb. 27, 2015). Based on these facts the Court found that there was no probable cause to arrest Skube for resisting or obstructing a police officer. *Id*. Here, Plaintiff backs away from the officers, pulls away from McCallum as he tries to handcuff her, refuses orders to turn around, refuses order to place her arm behind her back, proceeds to hold her arms tight to her body to avoid arrest, and the pulls herself to the floor in an attempt to avoid arrest. Exh.1 at 10:06- 10:13, 10:30-10:43, 10:53-11:13, 16:26; Exh. 2 at 12:05-12:18, 12:32-13:17, 18:20. Unlike *Skube*, Plaintiff is never tased. She is simply handcuff and arrested. *Skube* is inapplicable to this case.

Interestingly, Plaintiff also relies on *Covington*, which was affirmed in part on appeal. Directly relevant to this case, the Seventh Circuit upheld summary judgment in favor of Defendants, stating that,

> We consider the "severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. We also consider whether the suspect "was interfering or attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir.2000). Even assuming that Covington Sr. did not truly threaten the safety of the officers, ***he admittedly resisted their lawful entry into his home and interfered with their attempt to execute the lawful arrest*** of Covington Jr. Because of Covington Sr.'s demonstrated refusal to cooperate, no jury could find that handcuffing him, lifting him, and forcing him into a chair was excessive. The officers may have caused an injury to Covington Sr., but without evidence that the police intended to injure him gratuitously, there is no constitutional violation. *Cf. Sallenger v. Oakes,* 473 F.3d 731, 740 (7th Cir.2007) (repeated blows delivered after suspect was handcuffed constituted excessive force).

*Covington v. Smith,* 259 F. App'x 871, 875 (7th Cir. 2008). Even relying on the cases cited by Plaintiff, this Court should find that the video evidence irrefutably shows that Plaintiff does not have a viable excessive force claim. While Plaintiff may have pled facts to support a claim, she intentionally withheld significant facts concerning the encounter. Plaintiff's complaint ignores that when Defendant McCallum informed Plaintiff that she was being placed under arrest and she

8

immediately resisted arrest. Exh. 1 at 10:11- 10:38. She fails to plead that she admitted that when Defendant Officers were attempting to place her into custody that she was "backing up". Exh.1 at 16:26; Exh. 2 at 18:20. Notably, Plaintiff's complaint does not mention that he pulled her arms away from Defendant McCallum, and ultimately threw herself on the ground. Exh. 1 at 10:23-10:42; Exh. 2 at 12:42-13:17. Defendant Officers – who never went to the ground- were able to pull Plaintiff back to her feet, yet she continued to pull away and eventually went back to the ground. Exh. 1 at 10:47; Exh. 2 at 13:17. Defendant Officer again pulled Plaintiff back to her feet and ultimately gained control over Plaintiff's other arm. Exh. 1 at 10:23- 10:59; Exh. 2 at 12:55-13:13:15. The actions of the Defendant Officers were taken in response to Plaintiff's actions.

### A. Defendants Did Not Use Excessive Force When Plaintiff Actively Resisted Arrest.

Plaintiff argues that a review of excessive force claims is "inherently fact-dependent" and "whether the person actively resisted arrest." Here the facts of the encounter and the force used are entirely captured on video. They show that when Defendant McCallum told Plaintiff she was under arrest she actively fought and resisted the arrest both physically and verbally. See *Supra* p. 8-9.

Plaintiff's response goes on to direct this Court to consider "the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any efforts made by the defendant to temper or limit the amount of force, the severity of the crime at issue, the threat reasonably perceived by the officer(s), and whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing". Pl's resp. at pg. 8. Again, the facts in this case show that Plaintiff's conduct created the need for the use of force. Th video makes it clear that Defendant Officers did not use any more force than was necessary to

9

take Plaintiff into custody. Therefore, it is clear that Plaintiff does not state a viable excessive force claim and Count II of her Complaint should be dismissed.

### IV. Plaintiff Fails To Sufficiently Plead *Monell* Claims Against The City of Chicago.

Plaintiff alleges two *Monell* claims under a widespread practice theory: Count IV, that the City has a "custom of unnecessarily escalating encounters;" and Count V, that the City fails to train its officers regarding co-parents accused of violating court orders. ECF No. 1 at 7-9. Plaintiff makes no allegations that her *Monell* claim is directed at an express policy or is due to the actions of a person with final policy making authority and failed to argue to the contrary in her response, therefore waiving any such argument. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017). Plaintiff's *Monell* claims should be dismissed. First, Plaintiff fails to meet the pleading standard. Second, Plaintiff's claims rely on boilerplate language that merely state the elements of *Monell*. Third, Plaintiff's claims are not plausible and there is no underlying constitutional violation.

#### A. Plaintiff Fails to Meet the Pleading Standard for Her *Monell* Claims.

Plaintiff seeks to save her *Monell* claims by hiding behind the fact that there is no heightened pleading standard for *Monell*. ECF No. 23 at 11. Although this is technically true, Plaintiff's argument misses the mark and is not persuasive. The Supreme Court in *Leatherman* held that there is no heightened pleading standard for *Monell* claims. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit et al.,* 507 U.S. 163, 167-68 (1993). However, the Court later explained that the pleading standard for all cases require more than bare accusations without sufficient facts to support them, essentially adopting the pleading standard it previously rejected in *Leatherman*. C*ompare Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *with*

10

*Leatherman,* 507 U.S. at 167-68. The Court further explained that bare assertions supported by conclusory statements does not meet the notice pleading standard. *Iqbal,* 556 U.S. at 678.

Plaintiff further argues that conclusory *Monell* allegations can survive a motion to dismiss if they provide sufficient notice of what the claims are against the municipality. ECF No. 23 at 11. However, this reliance is flawed and at odds with *Ibal*. Plaintiff's support for this ultimately comes from cases that predate *Iqbal* and are not supported by the pleading standard *Iqbal* set. *See Howard v. Sheriff of Cook County,* No. 15 C 9384, 2016 WL 4366598 at *3 (N.D. Ill. Aug. 16, 2016) (relying on *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) and *Leatherman,* 507 U.S. at 164). Plaintiff hopes to survive Defendant's motion to dismiss with boilerplate language and conclusory statements. This does not meet the notice pleading standard and necessarily fails.

### B. Plaintiff's *Monell* Claims Fail Because They Rely On Boilerplate Recitations Of The Elements Of *Monell*.

Plaintiff's *Monell* claims rely on boilerplate and irrelevant information and should therefore be dismissed. Plaintiff must plead sufficient factual content in order for the court to draw the reasonable inference that the City has the problematic policy or practice Plaintiff alleges. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

Plaintiff supports her claims by referencing portions of the United States Department of Justice ("DOJ") investigation into the Chicago Police Department. The DOJ report is not relevant to Plaintiff's *Monell* claim and does not bring her claim within the pleading requirements necessary to survive a motion to dismiss. Plaintiff's support for the DOJ report is not persuasive and is distinguishable. Plaintiff's reliance on *Johnson* is misplaced. ECF No. 23 at 13. In *Johnson*, the court determined that a *Monell* claim regarding the code of silence could survive a motion to dismiss based on the inclusion of additional allegations the plaintiff included in his response. *Johnson v. City of Chicago et al.,* No. 20 C 7222, ECF No. 50 at 12 (N.D. Ill. Sept. 28, 2021).

11

Plaintiff makes no attempt to do the same here. The court in *Johnson* referred to the DOJ report but did not analyze it as being sufficient for the basis of showing a widespread practice and did not analyze the impact of the Consent Decree on plaintiff's M*onell* claim. Furthermore, the incidents underlying the *Monell* claims in *Gill* and *Arquero* do not concern the City or the DOJ report. *Gill v. City of Milwaukee,* 850 F.3d 355 (7th Cir. 2017); *Arquero v. Sheriff Tom Dart et al.,* No. 19-cv-1528, ECF No. 113 (N.D. Ill. Feb. 2, 2022). The incident in *Shields* predates the Consent Decree and alleged a code of silence, not a failure to train or a widespread practice of escalating situations. *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553 (N.D. Ill. Mar. 2, 2018). None of Plaintiff's support stands for the proposition that a *Monell* claim should survive a motion to dismiss based on the DOJ report even in light of the Consent Decree entered into by the City.

Plaintiff seeks to circumvent the Consent Decree by implying this Court should not take judicial notice of it because it is a fact in dispute. ECF No. 23 at 14. This argument fails. Although a court should not take judicial notice of a fact in dispute, it can take judicial notice of a publicly available document such as the filing of the Consent Decree and its contents. *See* Fed. R. Evid. 201; *Snell-Jones v. Hertz Corp. et a.,* No. 19-cv-00120, ECF No. 59 at 6 (N.D. Ill. Mar. 13, 2020). Defendants are not asking this Court to take judicial notice that the City is in perfect compliance with the Consent Decree. The fatal flaw to Plaintiff's claim is that the existence of the Consent Decree in 2019 and its stated purpose, which Plaintiff does not dispute, negate the plausible possibility of showing that the City was deliberately indifferent based on the DOJ report from 2017. This is especially true considering that the underlying incident in this case occurred on January 30, 2020. ECF No. 1 at ¶ 10. Simply, the DOJ report does not apply to this case. What remains are boilerplate allegations and conclusory statements that are insufficient, even under the notice pleading standard. Plaintiff's Count IV and Count V should be dismissed.

### C. Plaintiff's *Monell* Claims Fail Because They Do Not Plausibly Allege Moving Force And There Are No Constitutional Violations.

The alleged policy of a widespread practice *Monell* claim must factually allege that the policy itself was the moving force behind the constitutional violation. *Waters v. City of Chicago*, 580 F.3d 575, 580-81 (7th Cir. 2009). This cannot just be a random event. *Calhoun v. Ramsey*, 508 F.3d 375, 380 (7th Cir. 2005). Here, Plaintiff alleges that the City has a widespread policy or practice of "unnecessarily escalating encounters" and fails to train its officers regarding co-parents accused of violating court orders. ECF No. 1 at 7-9. These claims are not plausible.

First, Plaintiff seeks to stand on the idea that a failure to train claim can survive a motion to dismiss without showing numerous violations. ECF No. 23 at 12. However, this argument is undeveloped and misguided. The Supreme Court allowed for a narrow possibility that a failure to train claim could potentially survive without showing other violations but only when the consequences of the failure to train are "so patently obvious that a city could be liable under § 1983[.]" *Connick v. Thompson,* 563 U.S. 51, 64 (2011). However, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62. Plaintiff makes no argument that her case is the exception to the rule instead of the norm. There are no plausible factual allegations to support the idea that the City's alleged failure to train and custom of unnecessarily escalating encounters were so obvious that the City was on notice of § 1983 liability and therefore deliberately indifferent. Plaintiff's argument is undeveloped, unpersuasive, and should not deter this Court from granting Defendants' motion to dismiss.

Second, Plaintiff's factual support in her response relies on the DOJ report findings and the underlying facts from the alleged incident at issue. ECF No. 23 at 14-15. However, none of these facts speak to the plausibility that the City's policies were the moving force for the Defendant

13

Officers or that the incident alleged in Plaintiff's complaint was anything more than an isolated event. There are no allegations or arguments that similar instances to Plaintiff's allegations have occurred before in Chicago. Instead, Plaintiff argues that the facts make it plausible that the Defendant Officers "ramped up their aggression in response to Plaintiff's refusal to acquiesce to their misreading of the court order and became physically violent when she asked them to leave." ECF No. 23 at 15. Even if that is true, there is no connection, either in argument or factual allegation, that the alleged policies Plaintiff complains of in Count IV and Count V were the moving force for the Defendant Officer's actions. This is simply too far a leap to be considered plausible.

Lastly, as argued more fully above and in Defendants' motion to dismiss, Plaintiff's *Monell* claims cannot survive because there is no underlying constitutional violation. *Sallenger v. City of Springfield, Ill.,* 630 F30 F.3d 499, 505 (7th Cir. 2010). Therefore, Defendants' motion to dismiss should be granted and Count IV and Count V should be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, for the reasons stated in Defendants' Motion to Dismiss Plaintiff's Complaint and the foregoing reasons in Defendants' Joint Reply in Support of Their Motion to Dismiss Plaintiff's Complaint, Defendants City of Chicago, McCallum and Delgado respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint and for any other relief deemed just by this Honorable Court.

    Respectfully submitted,

    /s/ *Jessica L. Griff*
    Jessica L. Griff
    Assistant Corporation Counsel Supervisor

Jessica L. Griff, Assistant Corporation Counsel Supervisor
Michele McGee, Assistant Corporation Counsel

City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-2826
Attorney No. 6309134
Jessica.Griff@cityofchicago.org
*Attorneys for the Defendant Officers*

                                                */s/ Maxwell Evan Lisy*
                                                MAXWELL EVAN LISY
                                                Assistant Corporation Counsel

Maxwell Evan Lisy, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-0305
Attorney No.: 6321014
Maxwell.lisy@cityofchicago.org
Counsel for Defendant City of Chicago