**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MELISSA HALIGAS,

    Plaintiff,

        v.

CITY OF CHICAGO et al.,

    Defendants.

Case No. 1:22-cv-00313

Hon. Elaine E. Bucklo

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT ..................................................................................................................... 5

I.    The Court Should Deny Summary Judgment on the False Arrest Claim. .......................... 5

    A.    A Reasonable Jury Could Find McCallum and Delgado Lacked Probable Cause to Arrest Haligas for Unlawful Visitation Interference. ................................................. 6

    B.    A Reasonable Jury Could Find McCallum and Delgado Lacked Probable Cause to Arrest Haligas for Resisting Arrest. .......................................................................... 11

    C.    Defendants Are Not Entitled to Qualified Immunity on the False Arrest Claim. ..... 15

II.   The Court Should Deny Summary Judgment on the Excessive Force Claim. ................... 20

    A.    A Reasonable Jury Could Find McCallum and Delgado Used Excessive Force When They Forcefully Restrained Haligas. ............................................................ 20

    B.    Defendants Are Not Entitled to Qualified Immunity on the Excessive Force Claim. ...................................................................................................................... 25

III.  The Court Should Deny Summary Judgment on the Failure to Intervene Claim Against Delgado. .......................................................................................................................... 26

IV.   The Court Should Decline Defendants' Invitation to Dismiss Haligas's Request for Punitive Damages. ........................................................................................................... 27

V.    Haligas's *Monell* Claims Survive Summary Judgment. .................................................. 28

CONCLUSION ................................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Abbott v. Sangamon Cnty*, 705 F.3d 706 (7th Cir. 2013)............................................. 12, 17, 18, 25

*Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005) ...................................................... 5, 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 5

*BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986)................................................................... 7, 11, 16

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ................................................................... 20

*Brooks v. City of Aurora*, 653 F.3d 478 (7th Cir. 2011)..................................................... 15, 18, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 5

*Chavez Garcia v. Arona*, No. 17 C 6136, 2020 WL 902827 (N.D. Ill. Feb. 25, 2020)................ 25

*Cibulka v. City of Madison*, 992 F.3d 633 (7th Cir. 2021) ........................................................... 19

*Clarett v. Roberts*, 657 F.3d 664 (7th Cir. 2011)................................................................... 14, 23

*Dockery v. Blackburn*, 911 F.3d 458 (7th Cir. 2018) ...................................................... 13, 14, 20

*Doxtator v. O'Brien*, 39 F.4th 852, 865 (7th Cir. 2022) ........................................................ 26, 27

*Forrest v. Prine*, 620 F.3d 739 (7th Cir. 2010)........................................................................ 14, 15

*Garcia v. City of Chicago*, 2012 WL 601844 (N.D. Ill. Feb. 23, 2012)................................. 22, 24

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................................................... 20

*Howell v. Smith*, 853 F.3d 892 (7th Cir. 2017) ........................................................................... 24

*Johnson v. Eau Claire Police Dep't*, 2020 WL 10702725 (W.D. Wis. 2020) .......................... 8, 9

*Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996) ............................................................................. 27

*McBride v. Grice*, 576 F.3d 703 (7th Cir. 2009).......................................................................... 6

*Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985) ...................................... 17

*Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022) .................................................................. 27

*Neita v. City of Chicago*, 830 F.3d 494 (7th Cir. 2016)................................................................. 5

*Padula v. Leimbach*, 656 F.3d 595 (7th Cir. 2011) ..................................................................... 22

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003)........................................................................ passim

*Pearson v. Callahan*, 555 U.S. 223 (2009).......................................................................... 15, 25

*Phillips v. Community Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012)................................................. 20

*Rooni v. Biser*, 742 F.3d 737 (7th Cir. 2014)............................................................................... 23

*Skube v. Williamson*, No. CV 12-3185, 2015 WL 890363 (C.D. Ill. Feb. 27, 2015) ................. 13

*Smith v. Wade*, 461 U.S. 30 (1983)............................................................................................. 27

*Sow v. Fortville Police Dep't*, 636 F.3d 293 (7th Cir. 2011)........................................................ 24

*Spierer v. Rossman*, 798 F.3d 502 (7th Cir. 2015) ...................................................................... 5

*Stainback v. Dixon,* 569 F.3d 767 (7th Cir. 2009) ...................................................................... 24

*Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617 (7th Cir. 2010) ........................... 7, 11

*Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006) ............................................................. 24

*Turner v. City of Champaign*, 979 F.3d 563 (7th Cir. 2020) .................................................. 25, 26

*Wilbon v. Plovanich*, 67 F. Supp. 3d 927 (N.D. Ill. 2014)............................................................ 9

*Williams v. City of Chicago*, 733 F.3d 749 (7th Cir. 2013) ...................................................... 16

*Williams v. Jaglowski*, 269 F.3d 778 (7th Cir. 2001) ................................................................ 18

*Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004) ......................... 27

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)........................................................................ 26, 27

*Zitzka v. Vill. of Westmon*t, 743 F. Supp. 2d 887 (N.D. Ill. 2010).................................... 6, 7, 8, 9

## Statutes

42 U.S.C. § 1983................................................................................................................... 27

720 ILCS 5/10-5-5(b) (West 2010)............................................................................................ 6

## Other Authorities

7th Cir. Pat. Jury Inst. 7:28 ................................................................................................... 28

## Rules

Fed. R. Civ. P. 56(a) .............................................................................................................. 5

## INTRODUCTION

Melissa Haligas was at home looking after her sick toddler when Chicago police officers Richard McCallum and Juan Delgado knocked on her door. Haligas, a petite woman dressed only in a thin nightgown, answered the door and invited the officers inside.

The officers told Haligas her ex-boyfriend had called them there and showed them a court order showing she was unlawfully interfering with his parenting time. Haligas replied that she was not. She explained that her son had been up the night before vomiting and was fast asleep, and that she intended to turn him over as soon as he woke up from his nap. She even offered to show the officers the language she was relying on in the full court order that allowed her to do so. The officers refused her offer and instead threatened to take her to jail, even though interfering with parenting time is a petty offense not punishable by jail time. Then the officers physically escalated the situation after Haligas asked them to leave her home and said she would call 911 when they refused.

Within minutes of knocking at her door, the officers had cornered Haligas in her kitchen, and forcefully restrained and arrested her for "unlawfully violating" her ex-boyfriend's parenting time. Haligas was screaming in pain. By that time, Haligas's sick toddler was awake, watching, and bawling.

Defendants would have this Court believe they handled the encounter by the book. They claim they had probable cause to arrest Haligas for unlawful violation of parenting time or resisting arrest. They also claim the force they used to restrain Haligas was justified because she—a tiny woman dressed in a nightgown—was dangerous and actively resisting them. Defendants now move for summary judgment on all claims, mostly parroting the same arguments this Court

1

rejected when it denied Defendants' motion to dismiss. This Court should reject those arguments again, deny Defendants' motion, and set this case for trial.

## STATEMENT OF FACTS

In the afternoon on January 31, 2020, Chicago police officers Richard McCallum and Juan Delgado responded to a call by Kevin Howard at Melissa Haligas's apartment building. DSOF Resp. ¶ 7. Howard met the officers in the lobby and told them that Haligas, his ex-girlfriend, was refusing to turn over their three-year-old son pursuant to a court order. *Id*. at ¶ 8.

McCallum reviewed messages between Haligas and Howard on Howard's phone, revealing that Haligas was not immediately turning over their son because he was ill. *Id*. at ¶ 13. Howard also showed McCallum a copy of a court order, dated January 8, 2020, on his phone. *Id*. at ¶ 10. McCallum knew from reviewing the document that the parenting agreement was set out over multiple orders. PSOF ¶ 4. McCallum reviewed only the one order, and the order he read did not set out what to do in the event the child was ill. *Id*. at ¶ 6. McCallum did not read every word of the order he reviewed. *Id*. at ¶ 7. And McCallum did not understand all of what he read. *Id*. at ¶ 8.

Before deciding whether Haligas was violating the parenting agreement, Defendants knew they needed to review the relevant order and identify all the language related to the violation at issue. *Id*. at ¶ 1. Defendants also knew they needed to understand what they read before deciding whether Haligas had violated the agreement. *Id*. at ¶ 2. If they were confused about the parenting order, Defendants understood that they needed to call a supervisor for help before acting. *Id*. at ¶ 3. And Defendants concede that after McCallum's review of the information he saw on Howard's phone and their conversation with Howard, they knew they needed to gather information from Haligas to understand if she was committing a crime. *Id*. at ¶¶ 12-13; *see also* DSOF Resp. ¶ 15.

2

McCallum returned Howard's cell phone to him, and the officers went to Haligas's apartment. DSOF Resp. ¶ 14. On the way, McCallum told Delgado that he was confused about the order. PSOF ¶ 9.

Haligas, a petite woman wearing only a nightgown, answered the door and invited the officers into her apartment. DSOF Resp. ¶ 16; PSOF ¶¶ 26-27. McCallum immediately asked Haligas: "Why aren't you handing over your son?" DSOF Resp. ¶ 19. Initially, Haligas was calm. PSOF ¶ 25. She explained that her son had been ill and vomiting all night and had therefore gotten little rest. *Id*. at ¶ 10. She was waiting for her son to wake up from his nap naturally before bringing him to Howard. *Id*. at ¶ 10. Haligas even showed the officers her son's packed bag and a bottle of Pedialyte by the door, packed and ready. *Id*. at ¶ 20. McCallum responded that she was violating a court order and would go to jail for unlawful violation of her ex-boyfriend's parenting time. *Id*. at ¶ 32; DSOF Resp. ¶¶ 27-28.

Haligas told Defendants they did not understand the order. *Id*. at ¶¶ 21-22. She offered to show the officers the portions of the order that supported her position that she was not obligated to turn the child over at that time due to the child's illness. *Id*. at ¶ 24; PSOF ¶ 14. The officers refused Haligas's offer, saying they had just looked at the relevant order. DSOF Resp. ¶ 24; PSOF ¶ 15. Defendants also turned down Haligas's offer to call the child advocate so the advocate could explain what the parenting agreement required. PSOF ¶ 17. McCallum said that regardless of what the child advocate had to say, he would still arrest Haligas because ultimately, he would have to "answer to" a judge. DSOF Resp. ¶ 30.

Things escalated. Minutes after allowing Defendants into her apartment, Haligas pointed to the apartment entrance, and told the officers to leave. DSOF Resp. ¶ 31. Haligas, who was holding her cell phone, said she would call 911 for help if the officers refused to leave. *Id*. at ¶ 34.

3

McCallum immediately tried to snatch Haligas's cell phone out of her hand. *Id*. at ¶ 37. Defendants then began backing a visibly frightened Haligas into her small kitchen, yelling at her repeatedly to calm down. *Id*. ¶¶ 36-43. Haligas yelled back: "I will call my doorman right now and have you removed from this premises!" *Id*. at ¶ 39. As McCallum advanced toward her in the kitchen, Haligas told him to "back up!" *Id*. at ¶ 41. Throughout this time, Haligas posed no threat—she was unarmed, barely clothed, did not physically attack the officers, and did not verbally threaten the officers. And the paperwork from Haligas's arrest indicates Defendants did not believe she was a threat. *Id*. at ¶¶ 43-44; PSOF ¶¶ 28-29.

Once Defendants had backed Haligas into the corner of her kitchen, they decided to arrest her for unlawful interference with visitation. PSOF ¶ 21. McCallum told Haligas to turn around and place her hands behind her back. DSOF Resp. ¶ 47. Haligas said, "No, leave me alone," but not in response to McCallum's "order." *Id*. at ¶ 50. Haligas didn't hear McCallum's "order" because she was "so in her head" with disbelief over the situation. *Id*. Rather than employ any mitigation techniques to deescalate the situation, PSOF ¶ 39, the officers descended on Haligas to handcuff her, *id*. at ¶¶ 21-22; DSOF Resp. ¶¶ 52-53. And although Haligas did not resist, the officers pulled her body to the ground and pulled her up again afterward. PSOF ¶ 23.

As the officers handcuffed her, Haligas screamed in pain. She yelled, "My wrist, my wrist!" *Id*. at ¶ 36; DSOF Resp. ¶ 55. Even after she was handcuffed Haligas continued to moan in pain, crying, "Look at my wrist! Look at my wrist! Ow look at my wrist!" and "Help me!" *Id*. In response, McCallum told Haligas to, "Stop it," and said, "We know." *Id*. Although Haligas did not receive any treatment that evening when officers transported her to Northwestern Memorial Hospital before releasing her without charge, DSOF Resp. ¶¶ 69-71, she sought treatment on her own the next day. PSOF ¶ 40. She suffered from pain, swelling and a contusion to her wrist because

of Defendants' excessively tight handcuffing. *Id*. at ¶ 39.

## LEGAL STANDARD

Summary judgment is only appropriate if there is no genuine dispute about any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute is "genuine" if there is enough evidence in the record for a "reasonable jury" to decide the fact in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). And a fact is material if its truth "might affect the outcome" of the case. *Id*. "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). If, from the evidence in the record, a reasonable jury could find for the plaintiff as the non-moving party, the Court must deny the motion. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ARGUMENT

### I.    The Court Should Deny Summary Judgment on the False Arrest Claim.

"To prevail on a false arrest claim under § 1983, a plaintiff must show that there was no probable cause for [her] arrest." *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). Probable cause depends on whether "the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id*. (cleaned up).

Here, construing the evidence in a light most favorable to Haligas, the facts and circumstances within McCallum and Delgado's knowledge were insufficient to warrant a prudent person in believing that Haligas was committing the offense of unlawful visitation interference or resisting arrest. Qualified immunity is not available to McCallum and Delgado because no reasonable officer would have believed probable cause existed for either offense. Defendants are therefore not entitled to summary judgment on Haligas's false-arrest claim.

### A. A Reasonable Jury Could Find McCallum and Delgado Lacked Probable Cause to Arrest Haligas for Unlawful Visitation Interference.

A reasonable jury could conclude that McCallum and Delgado did not have probable cause to arrest Haligas for the offense of unlawful visitation interference.[1] This is because the only information the officers had on which to base probable cause was Howard's self-serving claims and Defendants' cursory glance at a "confusing" document Howard showed them on his phone. After receiving that information, Defendants knew they needed to investigate further but did not. PSOF ¶¶ 12-13.

An officer may rely on "a reasonably believable witness" to supply probable cause, but "if the … witness's information would lead a reasonable officer to be suspicious, the officer has a duty to pursue reasonable avenues of investigation and may not close his or her eyes to facts that would clarify the situation." *Zitzka v. Vill. of Westmon*t, 743 F. Supp. 2d 887, 908 (N.D. Ill. 2010) (citing *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009)). "Reasonable avenues of investigation

---

[1] Defendants spend a considerable portion of their summary judgment brief explaining that the offense of "unlawful visitation interference," 720 ILCS 5/10-5-5(b) (West 2010), is an arrestable offense. ECF No. 97 at 14-16. That aside is irrelevant and is not the first time Defendants have missed the point: Plaintiff's position is, and has always been, that Defendants did not have probable cause to believe she had committed (or was committing) a crime, not that they violated her rights by arresting her for a non-arrestable offense. *See, e.g.*, ECF No. 23 at 5 ("Plaintiff does not allege, as Defendants appear to believe, that because Defendants arrested her for a non-arrestable offense under Illinois law (which they did), they violated the Fourth Amendment. Rather, Plaintiff alleges that Defendants lacked probable cause to think she was committing a crime.").

must be pursued especially when, as here, it is unclear whether a crime had even taken place." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). The less serious the alleged crime and the lesser the threat of its "imminent repetition," the more "information the police are required to gather before establishing probable cause." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 624-25 (7th Cir. 2010) (cleaned up).

At trial, Haligas can produce substantial evidence to show that McCallum and Delgado did not have probable cause to arrest her after speaking with Howard and glancing at his phone. She can also produce evidence to show that McCallum and Delgado did not even perform the most basic investigation to determine whether Haligas had unlawfully interfered with Howard's visitation time.

First, the evidence shows that McCallum and Delgado had no probable cause after speaking with Howard and hearing his interpretation of the parenting agreement. *Zitzka*, 743 F. Supp. at 908. McCallum and Delgado *conceded* they had no basis to believe Howard's word that Haligas was violating the parenting order. PSOF ¶ 19. Moreover, the information they received from Howard—a copy of one order on a cell phone—was not straightforward. McCallum admitted he did not read every word of the order, *id*. at ¶ 7, and he found the language he did read confusing, *id*. at ¶ 8. McCallum also expressed his confusion about what he read on Howard's phone to Delgado as they made their way to Haligas's apartment. *Id*. at ¶ 9. And McCallum knew what he read was not a standalone document: The order made clear that "there [were] multiple orders," governing Haligas and Howard's parenting agreement. *Id*. at ¶ 4. McCallum knew he'd seen only one document, and that order did not set out what to do if the child was ill. *Id*. at ¶ 6.

From that evidence, a reasonable jury could conclude that Defendants did not have probable cause after speaking with the father and reviewing the information he gave them,

triggering a "duty to pursue reasonable avenues of investigation … that would clarify the situation." *Zitzka*, 743 F. Supp. 2d at 908. Defendants *agree*: They admit that the conversation with Howard and the information on his phone did not supply enough information for them to conclude Haligas had committed a crime. PSOF ¶ 12. And they agree they needed to gather information from Haligas to understand if she was committing a crime. *Id*. at ¶ 13.

But Defendants failed to perform *any* investigation that could have created a basis for probable cause. Once Defendants got to Haligas's door, they forgot that they needed more information. PSOF ¶¶ 12-13. As soon as McCallum and Delgado entered Haligas's apartment, McCallum—suddenly purporting to be clear about the "confusing" order he'd just read—announced his conclusion that she was in violation of the order. DSOF Resp. at ¶¶ 23, 27. Haligas explained numerous times that the officers did not understand the order. *Id*. at ¶¶ 21, 23, 29; PSOF ¶ 14. She calmly offered to show them the full order and the provision she was relying on to allow her ill son to finish his nap before bringing him to Howard. DSOF Resp. ¶¶ 20, 24; PSOF ¶ 15. She even offered to call her son's child advocate to explain the parenting order to the officers. *Id*. at ¶ 29; PSOF ¶ 17. Defendants refused her offers. *Id*. at ¶¶ 27, 29-30. McCallum testified that he had already decided Haligas had no valid defense to Howard's accusation "without looking at the language" she wanted to show him. *Id*.

Defendants claim that spurning every attempt Haligas made to prove she was not violating the parenting order was actually "seek[ing] out Plaintiff's side of the story." ECF No. 97 at 11-14. And so, they argue "they were not required to go digging for a possible innocent explanation where none was immediately apparent." ECF No. 97 at 14. But the principle on which Defendants rely—that where there are "inconsistent witness statements," "probable cause doesn't require officers to weigh the inculpatory and exculpatory evidence," *Johnson v. Eau Claire Police Dep't*, 2020 WL

10702725, at *3 (W.D. Wis. 2020), is inapposite here. That principle would only apply if McCallum and Delgado had interviewed Haligas and found themselves left with inculpatory and exculpatory evidence to weigh. Because they failed to meaningfully engage with Haligas, the officers could not reasonably have concluded she had no information or "facts that would help clarify the situation." *Zitzka*, 743 F. Supp. at 908; DSOF Resp. ¶¶ 12, 20-30; PSOF ¶¶ 14-17 (summarizing evidence Haligas offered to show officers and they refused to review). Indeed, this Court has already concluded based on even *less* evidence[2] that McCallum and Delgado *did not* seek out Plaintiff's side of the story as they proclaim. ECF No. 29 at 9. Defendants' interaction with Plaintiff did not, therefore, create a basis for a probable cause determination.

If that weren't enough, this Court routinely denies summary judgment on false arrest claims when, as here, officers fail to investigate allegations made by putative victims the officers have reason to be skeptical of. In *Zitzka v. Village of Westmont*, for example, an officer was investigating an incident where the plaintiff, Zitzka, had allegedly driven by the home of a family (with whom she had a serious ongoing feud) and yelled harassing comments. 743 F. Supp. 2d at 912-13. The family reported that Zitzka had harassed them for months and had come onto their property, so the officer obtained an arrest warrant against Zitzka for criminal trespass. *Id*. This Court denied the officer's summary judgment motion, concluding that a reasonable jury could find the officer should have been skeptical of a witness's testimony against Zitzka because of the ongoing conflict between Zitzka's family and the witness's family. *Id*.; *see also Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 941-42 (N.D. Ill. 2014) (concluding dispute about easily verifiable fact triggered duty to

---

[2] This Court found that, based on body worn camera footage and the statements made by Howard and Haligas, "a prudent officer would arguably have investigated further before handcuffing plaintiff and threatening her with jail." ECF No. 29 at 9. That is especially so, the Court went on, "after plaintiff offered to provide a full copy of the custody order to establish her compliance." *Id*. Accordingly, Haligas was allowed to proceed on her false-arrest claim.

further investigate such that police officers were not entitled to summary judgment on plaintiff's false arrest claim). As in *Zitzka*, the officers here should have been skeptical of the father's testimony against Haligas because of the obvious conflict between the two. Defendants conceded as much, agreeing they needed more information after their conversation with Howard to make a probable cause determination. PSOF ¶¶ 12-13. Because Defendants then shirked their duty to investigate, they did not have probable cause to arrest Haligas, and they are not entitled to summary judgment.

Defendants parrot the same arguments they unsuccessfully raised at the motion to dismiss stage to show McCallum and Delgado had probable cause to arrest Haligas: (1) The officers spoke to Howard who told them Haligas was in violation of the parenting order; (2) they did a cursory review of what Howard told them was the parenting order on Howard's cell phone; (3) they went to Haligas's apartment to secure her compliance with the order; (4) Haligas said she would not wake her sick son and offered to pull up the parenting order; and (5) Haligas did not dispute Howard's parenting time had begun. *Compare* ECF No. 97 at 11-14 *with* ECF No. 16 at 7-8. Defendants say that, based on that information, they reasonably believed Haligas was committing a crime. *Id*.

But that argument deserves no more credence now than it did at the motion to dismiss stage. In denying Defendants' motion to dismiss, this Court concluded that, based on the information identified by Defendants, "a prudent officer would arguably have investigated further before handcuffing plaintiff and threatening her with jail time." ECF No. 29 at 9. Although the case is now at summary judgment, the evidence the district court relied on—including the officers' body worn camera footage—has not changed in Defendants' favor. *Id*. So, the same logic applies: Because a prudent officer would have been suspicious of Howard's statement and the information

10

he provided, Defendants needed to explore "[r]easonable avenues of investigation." *BeVier*, 806 F.2d at 128. That's especially so because, as this Court pointed out, "plaintiff offered to provide a full copy of the custody order to establish her compliance." ECF No. 29 at 9.

The officers had a duty to perform that minimal investigation for an additional reason: The alleged "crime" was trivial and there was limited threat of its repetition. *See Stokes*, 599 F.3d at 624-25 (explaining that the less serious the alleged crime and the lesser the threat of its "imminent repetition," the more "information the police are required to gather before establishing probable cause."). The undisputed facts establish that interference with parenting time is a petty offense. PSOF ¶ 32. And Defendants had no reason to think Haligas intended to withhold her son indefinitely: When Defendants arrived at Haligas's apartment, she explained that she was just waiting for her son—who had been vomiting all night and had a fever—to awaken naturally from his nap before turning him over to his father. PSOF ¶¶ 10-11. She even showed the officers her son's packed bag by the front door to demonstrate she had every intention of respecting Howard's parenting time. PSOF ¶ 20. Accordingly, Defendants were required to gather additional information before arresting Haligas for unlawful interference with Howard's parenting time.

### B. A Reasonable Jury Could Find McCallum and Delgado Lacked Probable Cause to Arrest Haligas for Resisting Arrest.

Defendants are not entitled to summary judgment under a theory that the undisputed facts show they had probable cause to believe Haligas resisted arrest. *See Payne v. Pauley*, 337 F.3d 767, 776-78 (7th Cir. 2003). On the contrary, the evidence shows Haligas did not resist, as this Court has already concluded: "[V]iewed in the light most favorable to plaintiff, … the BWC footage [does not] establish that she resisted arrest." ECF No. 29 at 10.

To start, a jury could find Haligas did not resist arrest by throwing herself to the floor, as Defendants claim. A reasonable jury could conclude that the footage "shows the Officers

forcefully and aggressively handcuffing plaintiff while repeatedly threatening to take her to jail." *Id*. Haligas's testimony bolsters the video evidence. Haligas did not resist arrest by "dropp[ing] her body weight to the ground" and pulling away when the officers tried to handcuff her. DSOF Resp. ¶ 51. Rather, the officers pulled her body to the ground and then pulled her back up to her feet. *Id*. at ¶¶ 51-53; PSOF ¶ 23. At summary judgment, Haligas's recounting of the facts controls. *See Payne*, 337 F.3d at 776-78 (reversing and remanding district court's grant of summary judgment where plaintiff testified that "she did not resist arrest," reasoning that "[w]e must consider the facts in the light most favorable to [plaintiff], and based on the facts recited by [plaintiff], [defendant police officer] could not have reasonably believed that he had probable cause to arrest [plaintiff].")

And as a matter of law, Haligas did not resist arrest when she backed away from McCallum in the kitchen or by using her words. *See* ECF No. 97 at 17-18. As for backing up, Haligas had no reason to think, as she stepped back to create space between her and McCallum, that McCallum was trying to arrest her. *See* DSOF Resp. ¶ 37. Up until the moment McCallum instructed Haligas to, "Turn around and put your hands behind your back," the footage shows McCallum repeatedly shout at Haligas to calm down while backing her into her kitchen as she became visibly more fearful. *Id*. at ¶¶ 36-47. Backing away from an officer when one is not under arrest does not constitute resisting arrest. *See Abbott v. Sangamon Cnty*, 705 F.3d 706, 719-21 (7th Cir. 2013) (finding plaintiff's continued walking after officer ordered her to halt was not resisting arrest because she was not yet under arrest); ECF No. 29 at 10 (video footage does not conclusively establish officers had probable cause to arrest Haligas for resisting arrest "based on her reaction to their threats and aggression").

As for her words, although Haligas can be heard saying, "No, leave me alone," after McCallum's instruction to put her hands behind her back, she testified that she did not use those words in response to McCallum's order. Rather, Haligas explained that she did not even hear McCallum's "order" because she was "so in her head" with disbelief over the situation. DSOF Resp. at ¶ 50. Even so, "the law is clear … that a short period of arguing and not complying with police orders does not constitute resisting arrest." *Skube v. Williamson*, No. CV 12-3185, 2015 WL 890363, at *7 (C.D. Ill. Feb. 27, 2015) (citing *Payne*, 337 F.3d at 776).

Defendants' argument to the contrary falls flat. As they did in their motion to dismiss, Defendants insist that Haligas's resistance is "unambiguous" from the video. *Compare* ECF No. 97 at 17 *with* ECF No. 16 at 9 and ECF No. 27 at 6-7. But Defendants' attempt to characterize Haligas in the footage as actively resisting arrest by "backpedal[ing] from Officers, pull[ing] her arms towards her body in an attempt to resist being handcuffed, and contort[ing] her body in an attempt to defeat arrest," is not only strained, but also runs counter to the summary judgment standard because it asks the Court to construe the video in Defendants' favor. ECF No. 97 at 17. And, as was just explained, this Court already considered, and rejected, this precise argument. ECF No. 29 at 9-10.

The cases Defendants cite change nothing. ECF No. 97 at 17-18. *Dockery v. Blackburn* involved a man who was high on PCP when he was arrested for breaking into his girlfriend's apartment—an apartment which he was banned from for prior domestic disturbances—and yelling and punching holes in the walls. 911 F.3d 458, 461-62 (7th Cir. 2018). During booking at the jail, the man began acting erratically and got into a fight with two officers. *Id.* at 462. Another officer— a much smaller, female officer—tased the man twice as the fight was ending, when the man fell backwards. *Id.* at 462-63. The man argued the tasing amounted to excessive force. *Id.* at 467-69.

13

The Seventh Circuit concluded the officer was entitled to qualified immunity. *Id*. Video footage showed the plaintiff was "physically aggressive when the officers tried to handcuff him … twice escaping their grasp," and "[w]hen he fell backwards he wildly kicked in their direction and jumped to his feet." *Id.* At no point in the footage from this case is Haligas "physically aggressive," "wildly kick[ing]," or otherwise presenting a danger to the officers. Nor were the police called to her apartment in response to erratic or violent behavior. *Dockery* has no bearing on her case.

*Clarett v. Roberts* is also inapposite, as that case is in the wrong posture. 657 F.3d 664 (7th Cir. 2011). There, the Seventh Circuit declined to overturn a jury verdict, explaining that "[t]he parties told dramatically different stories about the confrontation inside Clarett's home, and the jury was entitled to believe the officers' version of events." *Id*. at 668. Under those different stories about the confrontation, a reasonable jury could draw different conclusions about whether the plaintiff resisted arrest, which is why that claim made it to a jury trial in the first place. *Id*. at 673-75. Here, we have camera footage of the incident, which this Court has already concluded could support Haligas's position that she was not resisting arrest, regardless of the story Defendants would like to tell. Like in *Clarett*, that is enough for Haligas to proceed to the jury on her false arrest claim.

*Forrest v. Prine*—an excessive force, not false arrest, case—likewise has no force here. 620 F.3d 739 (7th Cir. 2010). There, police responded to a report from Forrest's son that he was hitting people at their home. *Id*. at 741. When the police arrived, Forrest hit an officer in the face. *Id*. At the jail, refused to comply with strip search commands after initially stripping to his underwear. *Id*. at 741-42. He shouted obscenities with his fists clenched and was pacing back and forth facing an officer. *Id*. at 742. Over the course of several minutes, the officer repeatedly told Forrest that unless he complied, the officer would use the taser. *Id*. Eventually the officer tased

Forrest. *Id*. The officer testified that Forrest seemed to be under the influence of something, and he did not believe Forrest to be safe to approach. *Id*. The Court held that the officer's decision to use the taser did not amount to excessive force. *Id*. at 745-47. Here, the footage does not show Haligas behaving belligerently, hitting the officers, or shouting obscenities; it shows a petite, terrified woman dressed only in a nightgown begging for help as she's aggressively and forcefully arrested for nothing.

Finally, Defendants point to *Brooks v. City of Aurora*, likening the plaintiff there to Haligas and arguing the situations are "precisely" the same. 653 F.3d 478 (7th Cir. 2011); ECF No. 97 at 18. Not so. *Brooks* explained that "videotape shows that Mr. Brooks repeatedly, physically rebuffed Officer Lill's attempts to grasp him and that, after he had stopped backtracking, Mr. Brooks turned to face Officer Lill and threw out his arms in what could be construed as resisting or defensive posture." *Id*. at 484. Here, in contrast, the video shows nothing of the sort. Haligas did not repeatedly, physically rebuff the officers' attempts to grasp her—nor could she, given the size difference between them. PSOF ¶ 27. She could not retreat, as McCallum had backed her into the farthest corner of her small kitchen. DSOF Resp. ¶¶ 36-43. And she did not throw out her arms in a defensive posture. *Id*. at ¶ 51; PSOF ¶ 23. Unlike in *Brooks*, and as this Court already concluded, the video evidence *supports* Haligas's contention that she was not resisting in the same ways as the plaintiffs in any of the cases Defendants have cited.

For all those reasons, summary judgment is inappropriate on Haligas's false arrest claim.

## C.    Defendants Are Not Entitled to Qualified Immunity on the False Arrest Claim.

The individual officers are not shielded by qualified immunity from Haligas's false arrest claim. Defendants are entitled to qualified immunity only if their conduct did not violate a clearly established constitutional right of which a reasonable officer would have known. *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). In evaluating qualified immunity, courts ask: (1) Whether the facts, taken in the light most favorable to the plaintiff, make out a constitutional violation, and (2) whether that right was clearly established at the time of the alleged violation. *Id*. at 232.

As was just explained, the answer to the first question is yes. *See supra* Section IA-B. Defendants' last chance, then, is the "clearly established" part of the analysis. When it comes to false-arrest claims, the "clearly established" inquiry asks "whether a reasonable officer could have mistakenly believed that probable cause existed." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). That is, did defendants have "arguable probable cause," *see id*., to arrest Haligas— either for unlawful interference with visitation or for resisting arrest? If they did not, qualified immunity must be denied. Here, viewing the evidence in the light most favorable to Haligas, there is no room for a reasonable mistake by McCallum and Delgado on either count.

Start with unlawful visitation interference. The information Defendants needed—the other parenting orders—"could have been easily obtained and [were] necessary before concluding" that Haligas had unlawfully interfered with Howard's parenting time. *BeVier*, 806 F.2d at 128. Not only was nothing stopping Defendants from getting the other orders, but Haligas repeatedly offered to show Defendants the relevant parenting order to establish her compliance with it. Defendants rebuffed her each time. That's despite the fact that they knew what Howard showed them was not the complete parenting agreement and despite the fact that what Howard showed them did not discuss what to do when the child was ill. Haligas also offered to call the child advocate to explain the parenting order to the officers. Defendants refused that offer as well.

A reasonable jury could easily conclude that Defendants were "unreasonable in not making those inquiries." *BeVier*, 806 F.2d at 128. Indeed, in the Seventh Circuit it has been clearly established for decades that officers must pursue reasonable avenues of investigation where, as

16

here, "it is unclear whether a crime [has] even taken place" and there is no exigency. *Id*. at 127-28 (holding that failing to question parents before arresting them for child neglect was an unreasonable mistake where the facts known to the officer "weakly supported an inference that the children were being neglected," noting that the Seventh Circuit has opined about "[t]he extent to which a police officer must investigate prior to arrest or search"); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1345-48 (7th Cir. 1985) (finding summary judgment improper for police officers where arrest could have been avoided if arresting officer had conducted a proper investigation because plaintiffs were not fleeing the scene, they were not dangerous, and no serious crime had taken place).

Defendants counter that there is ambiguity about whether they could arrest for the charge of unlawful visitation time in the first place, so there is no need to undertake a probable cause inquiry because they're automatically entitled to qualified immunity. ECF No. 97 at 27-28. The case Defendants cite does not go so far. In *Abbott v. Sangamon County*, the Seventh Circuit considered whether an officer was entitled to qualified immunity where he arrested a woman under an Illinois statute proscribing "a vast array of conduct, not just … resisting arrest." 705 F.3d at 723. The problem was, the woman's conduct fell somewhere in the middle on the spectrum of the "most straightforward cases of a statutory violation": "those in which a person physically scuffles with a police officer," and cases on the other end of the spectrum: those "involving only verbal argument." *Id*. at 722. So, the Court concluded that, because "reasonable minds could differ as to the meaning of the law," the officer was entitled to qualified immunity. *Id*. at 723. The ambiguity Defendants believe saves them—whether unlawful visitation interference is an arrestable offense—is not of the same kind as the "meaning of the law" that shielded the officer in *Abbott*. Indeed, it's an ambiguity that is entirely irrelevant to the claims in this case. *See supra* at 6 n.1.

Unlike in *Abbott*, the offense of unlawful visitation interference is well-defined, and so an arguable probable cause inquiry is required to determine whether Defendants are entitled to qualified immunity. And as was just explained, they are not. *See Abbot*, 705 F.3d at 714 ("Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment.")

As for resisting arrest, Delgado and McCallum are not entitled to qualified immunity unless they reasonably believed they had probable cause to think Haligas was resisting. At summary judgment, this Court must "consider the facts in the light most favorable to [Haligas.]" *Payne*, 337 F.3d at 777. Those facts are: (1) Haligas did not resist the officers by backpedaling in her kitchen because she was not yet under arrest; (2) Haligas did not resist the officers when she yelled, "No, leave me alone," after McCallum told her to put her arms behind her back because (a) she did not hear that "order" and (b) brief noncompliance with an order is not resistance; and (3) Haligas did not drop her body weight to resist arrest, but instead the officers pulled her to the floor. On those facts, it is clearly established that Defendants did not have arguable probable cause to believe Haligas was resisting arrest. *See id*. at 777-78. In addition, a reasonable jury could conclude based on those facts that Haligas "did not engage in any physical act that in any way hindered or impeded" Defendants' arrest. *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001). And, without some physical act of resistance, "defendants did not have … arguable probable cause to arrest" Haligas for resisting arrest. *Id*. Either way, neither officer is entitled to qualified immunity.

Defendants disagree, arguing that "[t]his case fits squarely within the holding of *Brooks*." ECF No. 97 at 28. With little explanation, Defendants say that, as in *Brooks*, Haligas "backed away from [the] Officers, and put her arms in a position to resist being placed into handcuffs." *Id*. (citing *Brooks*, 653 F.3d at 484). But what Defendants omit is the analysis in *Brooks*: "[T]he videotape

18

shows that Mr. Brooks repeatedly, physically rebuffed Officer Lill's attempts to grasp him and that, after he had stopped backtracking, Mr. Brooks turned to face Officer Lill and threw out his arms in what could be construed as a resisting or defensive posture." *Brooks*, 653 F.3d at 484. As an initial matter, backing away from the officers does not constitute resisting arrest. *See Abbot*, 705 F.3d at 719-21. Especially where, as here, Haligas backed up a couple feet as McCallum cornered her in her kitchen *before* announcing any intent to place her under arrest. That leaves Defendants' interpretation of Haligas's arm and body movements, which Haligas contests with her testimony. What's more, this Court has viewed the footage already, and determined that a reasonable jury could conclude Haligas *was not* resisting. Finally, the footage does not show the behavior described in *Brooks*: It does not show Haligas repeatedly, physically rebuffing McCallum and Delgado—she couldn't have if she'd wanted to, given their size differences. And it does not show Haligas throwing her arms anywhere, much less in a position that could be construed as a "defensive posture." Defendants are not entitled to qualified immunity based on *Brooks*.

Finally, Defendants claim they had arguable probable cause to arrest Haligas. ECF No. 97 at 28-29. They make no supporting argument, opting instead to cite one Seventh Circuit case, *Cibulka v. City of Madison*, 992 F.3d 633 (7th Cir. 2021). *Cibulka* stands generally for the proposition that, where a reasonable officer could have mistakenly believed that probable cause existed for a wrongful arrest, the officer is shielded by qualified immunity. *Id*. at 638. For the reasons already explained, Defendants are not entitled to qualified immunity: Viewing the evidence in the light most favorable to Haligas, a reasonable jury could conclude that there was no room for a reasonable mistake by McCallum and Delgado on either the unlawful visitation interference or resisting arrest charge.

## II.     The Court Should Deny Summary Judgment on the Excessive Force Claim.

### A.     A Reasonable Jury Could Find McCallum and Delgado Used Excessive Force When They Forcefully Restrained Haligas.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up). "[P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id*. "An officer may not use significant force … against a nonresisting or passively resisting subject." *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (cleaned up). Willful noncompliance with police commands is "passive resistance *requiring the minimal use of force*." *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012) (emphasis in original) (cleaned up).

At trial, Haligas can produce evidence to show that when Defendants arrested her for violation of parenting time, a petty offense, she was not actively resisting arrest, and she did not pose a threat to anybody. As to resistance, McCallum testified that the only reason he used force against Haligas was that she did not put her hands behind her back and allow him to handcuff her after the officers decided to arrest her for violating the parenting agreement. PSOF ¶ 37. Willful noncompliance is, at most, "passive resistance." *Phillips*, 678 F.3d at 525. And even assuming Haligas stiffened her body and would not allow McCallum to handcuff her as he alleges, DSOF Resp. ¶ 41, stiffening or dead weight is also a form of passive resistance. *Id*. at ¶ 38; *see also Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010) ("Resistance … runs the gamut from the purely passive protestor who refuses to stand, to the individual who is physically assaulting the officer.).

As to threat, while Haligas was cornered in her kitchen, she presented no threat to Defendants. McCallum testified that Haligas never brandished a weapon at him, threatened to brandish a weapon, or threatened any physical harm to the officers during the encounter. DSOF Resp. ¶ 42; PSOF ¶¶ 28-31. He also testified that he did not believe Haligas was going to use any weapon against him. *Id*. Finally, McCallum and Delgado completed paperwork about the arrest that same day. *Id*. They wrote that Haligas did not present a threat of battery at any time during the arrest. *Id*.

The evidence also shows that when Defendants arrested Haligas, they used significant force when they applied the handcuffs, causing Haligas substantial pain and an injury to her wrist. Haligas repeatedly informed Defendants that the excessively tight handcuffs were hurting her. The video footage shows, for minutes, Haligas crying out in pain: "Look at my wrist! Look at my wrist!" and "Help me!" DSOF Resp. ¶ 55; PSOF ¶ 36. In response the officers do not loosen her restraints, but McCallum instead tells Haligas to, "Stop it," and says, "We know." *Id*. Later, Defendants' supervisor, Lieutenant Michael O'Malley, instructed the officers who relieved Defendants that Haligas needed to obtain medical care before being released. *Id.* And her medical records from care she received the next day indicate that she suffered pain, swelling, and a contusion. PSOF ¶ 40.

That evidence, viewed in a light most favorable to Haligas, supports her position that Defendants used excessive force against her. *See Garcia v. City of Chicago*, 2012 WL 601844, at *8 (N.D. Ill. Feb. 23, 2012) ("[A]n excessive force claim based on handcuffing can survive summary judgment where the plaintiff adduces evidence of significant pain resulting from handcuffing under circumstances where the need for restraint was light."). Defendants are not entitled to summary judgment on the excessive force claim.

21

*Payne v. Pauley* is instructive. There, the Seventh Circuit considered whether a district court erred in granting qualified immunity to police officers on an excessive force claim where they had tightened handcuffs on a plaintiff's wrists until she could not feel her hands. 337 F.3d at 774-75. The plaintiff protested that the handcuffs were too tight and she was in pain, but the officers did not loosen the handcuffs until they arrived at the police station. *Id*. at 775. After the plaintiff was released from custody, she sought emergency medical care and was diagnosed with mild swelling and bruising. *Id*. The appeals court had no trouble reversing the district court, holding that "it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of others, and were suspected of committing only minor crimes." *Id*. at 780. Haligas checks the boxes: She was not resisting arrest (especially once she was handcuffed), did not pose a threat to the safety of others, was suspected of committing only a minor crime, and she was injured.

Defendants insist the video unambiguously demonstrates that Haligas flailed about, actively resisted arrest, and was in a heighted state of agitation, justifying the use of a high level of force. ECF No. 97 at 21-26. She posed a danger, they go on, to the officers and herself, so the force used was not excessive. *Id*. Defendants' argument is as familiar as it is unpersuasive. This Court already watched the body worn camera footage and, based on that footage alone, concluded Haligas did not actively resist arrest and so significant force could violate her Fourth Amendment rights. ECF No. 29 at 11.

Defendants' catalogue of caselaw supporting their argument that active resistance justifies the force used here is therefore irrelevant. *See Padula v. Leimbach*, 656 F.3d 595, 603-04 (7th Cir. 2011) (affirming district court's conclusion that use of force not excessive where suspect refused

officer command to get out of his car on his own, was kicking and flailing his arms at officers, and was hitting his head against the pavement); *Clarett*, 657 F.3d at 674-75 (declining to overturn jury verdict because the court could not conclude that no reasonable jury could have found in defendants' favor, noting that although plaintiff's story—including whether she was actively resisting arrest such that an officer reasonably deployed his taser on her—"differed sharply from that of the officers … it was entirely in the jury's province to choose which version to believe").

To the extent Defendants argue that McCallum and Delgado's aggressive and forceful handcuffing cannot support an excessive force claim because Haligas did not adequately inform Defendants of the problem, that argument fails too. ECF No. 97 at 23.  "A person has the right to be free from an officer's *knowing use* of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (emphasis added). The key is "knowing use." Defendants seem to believe that to make that showing, Haligas needed to continually renew her complaint that she was in pain from the handcuffing. Wrong. As Defendants recognize, Haligas *did* inform them that the handcuffs were causing her pain when she cried out, "My wrist, my wrist!" DSOF Resp. ¶ 55; PSOF ¶ 36. Not only that, Haligas continued to moan in pain, crying out "Help me!" and "Ow look at my wrist!" *Id.* In response to those cries for help, McCallum told Haligas to, "Stop it," and said, "We know." *Id*. From that evidence, a reasonable jury could conclude that the officers *knew* they had used the handcuffs in a way that inflicted unnecessary pain or injury on Haligas from the moment they handcuffed her—McCallum explicitly told her, "We know," when she complained. *Id*. And that same jury could conclude that Haligas stopped complaining not because her pain subsided, but because McCallum told her to "Stop it." *Id*.

For those same reasons, Defendants' string of cases standing generally for the proposition that handcuffing is not a use of force where officers don't know they've used handcuffs in a manner that harmed an arrestee, and the arrestee is not harmed, are irrelevant. *See* ECF No. 97 at 24-25 (citing *Stainback v. Dixon,* 569 F.3d 767, 773 (7th Cir. 2009) (arrestee complained only generally about pain after handcuffing); *Howell v. Smith*, 853 F.3d 892, 899-900 (7th Cir. 2017) (scant information officer had that handcuffing might aggravate plaintiff's medical condition did not outweigh concrete information about the gravity of the alleged crime); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (arrestee complained once that handcuffs were too tight without elaboration, suffered no injury, and did not seek medical treatment); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (plaintiff complained handcuffs were tight without elaboration, was handcuffed for only half an hour, and did not seek any medical care); *Garcia*, 2012 WL 601844, at *8 (plaintiff did not complain about pain from handcuffing, report any injury, or request treatment while in custody, and did not seek any treatment upon release).

Defendants' final argument on the excessive force claim is that even if McCallum is not entitled to summary judgment on the excessive force claim, Delgado is. Once again, Defendants say that is because the footage "definitively shows that the force used by [] Delgado was no greater than necessary to assist [] McCallum in bringing Plaintiff into custody." ECF No. 97 at 25. In addition, they urge that because Haligas could not identify acts by Delgado that constituted excessive force, her claim must fail. *Id*. at 25-26. Defendants argument once again signals a misunderstanding of the summary judgment standard. It does not matter that Haligas could not differentiate between what exactly McCallum and Delgado were doing behind her back to handcuff her. Her testimony is not the only evidence she's offered in support of summary judgment. Viewing the video footage in Haligas's favor, as is required, it is clear that Delgado

participated in forcefully handcuffing Haligas. The footage shows the officers, together, "advancing on plaintiff." *See* ECF No. 29 at 10; PSOF ¶ 22. It then shows the officers "forcefully restrain[] Haligas after she recoiled from their show of force." ECF No. 29 at 11. That is enough, and Delgado's request for summary judgment on the excessive force claim should be denied.

**B.      Defendants Are Not Entitled to Qualified Immunity on the Excessive Force Claim.**

McCallum and Delgado are not shielded by qualified immunity on Haligas's excessive force claim. In evaluating qualified immunity, this Court asks: (1) Whether the facts, taken in the light most favorable to the plaintiff, make out a constitutional violation, and (2) whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232.

As shown above, the facts in this case, taken in the light most favorable to Haligas, show a violation of her constitutional right to be free from Defendants' use of excessive force. *See supra* Section IIA.

Moving to prong two, long before McCallum and Delgado entered Haligas's apartment, "it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Abbott*, 705 F.3d at 730; *Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020) (noting that in cases of "passive resistance to lawful detention … significant force can violate the Fourth Amendment"); *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (explaining it is "clearly established that using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force"); *Chavez Garcia v. Arona*, No. 17 C 6136, 2020 WL 902827, at *5 (N.D. Ill. Feb. 25, 2020) (rejecting qualified immunity at summary judgment based on issues of fact on level of resistance and force). And two decades ago, the Seventh Circuit held in a substantially similar case that it was unlawful to use excessively tight handcuffs on an arrestee who, much like Haligas, was suspected of a minor crime,

25

posed no safety threat, and was not resisting. *Payne*, 337 F.3d at 774-75. Either way, the contours of Haligas's constitutional right were sufficiently defined that Defendants would have understood that their actions violated that right.

### III. The Court Should Deny Summary Judgment on the Failure to Intervene Claim Against Delgado.

A police officer who does not intervene to stop another officer from violating a person's rights is "liable under § 1983 if he had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Haligas's failure-to-intervene claim against Delgado is derivative of her false arrest and excessive force claims. And Defendants seek summary judgment on the failure-to-intervene claim for essentially the same reasons they seek dismissal of the false arrest and excessive force claims: They argue Haligas has "failed to adequately demonstrate that Officer McCallum violated the U.S. Constitution when he arrested Plaintiff." ECF No. 97 at 26. For the reasons discussed above, that argument fails. *See supra* Sections IA-B & IIA. A reasonable jury has sufficient evidence to conclude McCallum used excessive force *and* falsely arrested Haligas right in front of Delgado. *Id*. And the question "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Doxtator v. O'Brien*, 39 F.4th 852, 865 (7th Cir. 2022) (citation omitted). Summary judgment on Haligas's failure-to-intervene claim against Delgado must therefore be denied.

Defendants' remaining argument for why Haligas's failure-to-intervene claim against Delgado fails is confused. After citing to a Seventh Circuit case recognizing the viability of failure-

to-intervene claims, ECF No. 97 at 26 (citing *Turner*, 979 F.3d at 571), Defendants go on to say that "the Seventh Circuit has held that failure to intervene is not a viable source of liability." ECF No. 97 at 26. In support of that argument, Defendants cite to Judge Easterbrook's concurring opinion in *Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022). No matter how much Defendants wish it were so, a concurrence is not a holding. Unless and until the Seventh Circuit overturns its long line of cases recognizing that police officers must intervene when they see their colleagues infringing on the constitutional rights of citizens, then, Haligas may pursue her failure-to-intervene claim against Delgado. *See, e.g.*, *Doxtator*, 39 F.4th at 864-65; *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005); *Yang*, 37 F.3d at 285.

## IV. This Court Should Decline Defendants' Invitation to Dismiss Haligas's Request for Punitive Damages.

Punitive damages are recoverable against defendants sued in their individual capacities under 42 U.S.C. § 1983 if a plaintiff makes a showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) (same); *see also Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996) (punitive damages are "to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct"). Haligas seeks punitive damages against McCallum and Delgado in their individual capacities. ECF No. 1 at 10.

Defendants argue that Haligas cannot show McCallum or Delgado "violated her Constitutional rights, let alone that they acted with malice," and so they urge this Court to dismiss Plaintiff's claim for punitive damages. ECF No. 97 at 31-32. Defendants are mistaken. To establish her entitlement to punitive damages against McCallum or Delgado, Haligas must show that their conduct was malicious *or* that they acted with "reckless … disregard" of her rights. *Smith*, 461

U.S. at 51; *see also* 7th Cir. Pat. Jury Inst. 7.28. Conduct is "in reckless disregard of Plaintiff's rights if, under the circumstances, Defendant simply did not care about Plaintiff's [safety] [or] [rights]." Pat. Jury Inst. 7.28. Plenty of evidence would support a jury finding that Defendants did not care about Haligas's safety or rights. Among other things, Defendants refused to allow her to show them the parenting order she was relying upon; they repeatedly threatened to take her to jail for a crime they knew was not punishable by imprisonment; they threatened her with a felony charge after she questioned whether the force they used on her was excessive; they refused to allow her to get dressed before handcuffing her and leading her out of her apartment in a Chicago winter; and it was so obvious to their supervisor that Defendants mishandled the situation, he twice exclaimed "Holy fuck!" while questioning them about their investigation. *See*, *e.g.*, PSOF ¶¶ 15, 32, 35; DSOF Resp. ¶¶ 36. Haligas's request for punitive damages survives summary judgment.

## V.     Haligas's *Monell* Claims Survive Summary Judgment.

This Court has bifurcated Haligas's Monell claims against the City of Chicago from the claims against McCallum and Delgado. ECF No. 69. Because neither officer is entitled to summary judgment on Haligas's false arrest or excessive force claims, Defendants suggestion that summary judgment in favor of the City should be granted is inappropriate. ECF No. 97 at 32-33.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment in its entirety and let Haligas proceed to trial on all her claims against McCallum and Delgado.

Dated: February 21, 2024        /s/ Rosalind E. Dillon

Alison R. Leff
Thomas R. Kayes
Rosalind E. Dillon
The Civil Rights Group, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
(708) 722-2243
roz@civilrightsgroup.com

*Attorneys for Plaintiff Melissa Haligas*